## THOMAS HENDERSON v. ALEXANDER BEATON.

1. COMMISSIONERS OF APPEALS—CONSTITUTIONAL LAW.—The act to create a commission of arbitration and award and to define the duties thereof, and to make appropriation to pay the salaries of the judges thereof, approved July 9, 1879, is constitutional and valid, in so far as it creates said commission and authorizes it to report its conclusions or awards in the cases referred to it.

2. COMMISSIONERS OF APPEALS.—In regard to the tribunal known as the "Commissioners of Appeals for the State of Texas," created by act approved July 9, 1879, the following conclusions are reached by a majority of this court :

    1. The commission is not a court, because it acts only by consent of both parties, and even then is without jurisdiction to render, or power to enforce, a judgment.

    2. It has no jurisdiction, for consent cannot give jurisdiction.

    3. It is but a board of referees or arbitrators, provided to facilitate the adjustment of litigated cases pending in the courts of last resort.

    4. It deprives no citizen, against his will, of the right to go with his appeal to courts of last resort created by the Constitution.

    5. Its opinion settles no law, but affects only the particular case referred to it.

3. COMMISSIONERS OF APPEALS—JUDGMENT BY CONSENT.—The award of the commissioners of appeal will be entered up as the judgment of the court to which it is returned, like other judgments by consent, subject to be examined by the court to ascertain if it is such a judgment as the court may properly enter.

APPEAL from Navarro.

Section 1 of article 5 of the Constitution provides: "The judicial power of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commissioners' Courts, in Courts of Justices of the Peace, and in such other courts as may be established by law." * * *

On July 9, 1879, an act of the Legislature was passed entitled "An act to create a commission of arbitration and award and define the powers and duties thereof, and to make appropriation to pay the salaries of the judges thereof." Said act is as follows, viz.:

"SEC. 1. Be it enacted by the Legislature of the State of

Texas, that a commission of arbitration and award, to consist of three persons learned in the law, to be appointed by the Governor, by and with the advice and consent of the Senate, if in session, who shall hold their offices for two years from the date of their appointment, and receive for their services the same salary as judges of the Supreme Court, be, and the same is, hereby created, to be styled the 'Commissioners of Appeals of the State of Texas.' In case of a vacancy on said commission by the death or resignation of any member thereof during a vacancy [vacation] of the Legislature, it shall be the duty of the Governor to fill the same by appointment, the person appointed to continue in office until the next session of the Legislature after the appointment.

"SEC. 2. Said commission shall have the power to hear and pronounce award upon civil cases now or hereafter pending in the Supreme Court or the Court of Appeals, wherein the parties or their attorneys may file consent in writing to the reference thereof to said commission.

"SEC. 3. Said commission shall hold its sessions at the same time and places as the Supreme Court, and shall appoint one clerk, if necessary, and if no such clerk be appointed, the duties of that office shall be performed by the clerks of the Supreme Court and of the Court of Appeals, respectively, at the different branches thereof, who shall receive in either case the same fees as are allowed by law to the clerks of the Supreme Court for like services.

"SEC. 4. Said commission shall have a seal, being a star with five points, and the words 'Commissioners of Appeals of the State of Texas' around the same. Regular docket and minutes of all proceedings by or before said commission shall be kept, and the records and proceedings thereof shall be entitled to the same verity as are records and proceedings of courts of record, and all cases shall be docketed in the order of dates of filing of written consent provided in this act.

"SEC. 5. Said commission shall have the right to issue writs of *certiorari* to perfect the record, and such process as the

Supreme Court might issue to make parties, and shall have the power to punish for contempt.

"SEC. 6. All laws and rules regulating practice in the Supreme Court shall be of force in the practice and proceedings of said commission, so far as the same are applicable, and all applications for rehearing in cases referred to said commission shall be made before and determined by the commission.

"SEC. 7. Said commission shall report its conclusions or award to the Supreme Court or Court of Appeals, as the case may be, in the cases so referred, and may accompany the same with a brief synopsis of the case and their opinion thereon; and the conclusions or award aforesaid shall be and become the judgment of the Supreme Court or the Court of Appeals aforesaid; and said courts shall make and render such further order, judgment, or decree thereon as may be necessary or proper to make said award effective.

"SEC. 8. The opinions of said commission shall not be published in the reports of the decisions of the Supreme Court or the Court of Appeals, nor shall the same have any other or further effect than to determine the particular cause wherein rendered, and shall have no force, or effect, or authority as precedent in other causes.

"SEC. 9. And the sum of seventeen thousand seven hundred and fifty-four dollars, or so much thereof as may be necessary, is hereby appropriated out of any moneys in the treasury not otherwise appropriated for the payment of the salaries of the judges of said commission for the period ending first of March, 1881.

"SEC. 10. Whereas the near approach of the close of the present session of this Legislature, and the limited time allowed to legislation, an imperative public necessity exists for the suspension of the constitutional rule requiring bills to be read on three several days, and it is hereby enacted that said rule is suspended. The fact that the accumulation of business in the Supreme Court and in the Court of Appeals is so great as to prevent, in ordinary course, that speedy determination to

litigation which is essential to justice, creates an emergency that requires this act to take effect at once, and it is therefore enacted that this act shall take effect and be in force from and after its passage."

Section 13 of article 16 of the Constitution is as follows, viz.: "It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial."

The counsel for the parties in this cause having filed their motion for its reference to the commission of appeals, together with agreement for its reference, the following opinions were delivered on that motion.

*William Croft,* for appellant.

*C. M. Winkler,* for appellee.

GOULD, ASSOCIATE JUSTICE.—This motion is based upon a written agreement, signed by counsel, that the case, after its transfer, be referred to the " Commissioners of Appeals of the State of Texas," and in granting the motion this court must impliedly affirm the validity of that commission. Although when the motion was called the chief justice expressed a desire that the question be argued, it appears that counsel in this case are not in attendance, and no disposition to argue it having been manifested by any of the Bar present, we have found ourselves compelled to dispose of it without the aid of counsel. We have not felt at liberty to postpone the question longer, and proceed to announce, as the conclusion of the court, that the "Act to create a commission of arbitration and define the powers and duties thereof, and to make appropriation to pay the salaries of the judges thereof," is constitutional and valid, at least in so far as it creates said commission, and authorizes it to report its conclusions or award in the cases referred to it.

The main objection urged against the constitutionality of this act is understood to be that the commission is, in effect,

another Supreme Court and Court of Appeals, and that it is created in violation of that clause of the Constitution which says, " The judicial power of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commissioners' Courts, in Courts of Justices of the Peace, and in such other courts as may be established by law." (Article 5, sec. 1.)

In our opinion, the commission is not a court, because it acts only by consent of both parties, and even then is without jurisdiction to render or power to enforce a judgment. It has no jurisdiction, for consent cannot give jurisdiction. It is but a convenient and suitable board of referees or arbitrators, provided to facilitate the adjustment of litigated cases pending in the courts of last resort, available only where both parties agree that the case be so referred. It is not a tribunal before which any litigant can be forced to come with his appeal. The constitutional Supreme Court and Court of Appeals are still open to every party.

Undoubtedly, the Constitution, in establishing these courts of last resort, intended to place it beyond the power of the Legislature to force the citizen to go with his appeal before some other tribunal. If, in a case involving life, liberty, or property, the citizen were denied the right to resort to these constitutional courts, and driven before different tribunals, organized, perhaps, under unfavorable circumstances, and in a manner less calculated to secure wise and impartial adjudications, it is believed the Constitution would be violated. If the constitutionality and validity of an act of the Legislature were made to depend on the opinion of a commission, the Constitution would be violated. The constitutional courts are designed to secure the citizen in his rights, and to enforce the observance of constitutional limitations. The commission endangers no right of the citizen, and its opinion affects only the case referred to it by the consent of parties, settling no question of constitutional law, and, indeed, settling nothing beyond that case. The act creating it purports to create but a com-

mission of arbitration and award, having evident reference to that section of the Constitution making it the duty of the Legislature "to pass such laws as may be necessary and proper to decide differences by arbitration, where the parties shall elect that method of trial." (Const., art. 16, sec. 13.) As in other cases of arbitration, the commission acts only after consent of both parties. If, in consequence of the stage of the litigation and the limitations under which it is placed, the award of the commission assimilates to the opinion of an appellate court, it is still in substance but an award. In our opinion, the commission is not a court, but is a board of referees or arbitrators, for cases in the Supreme and Appellate Courts.

Another objection to the act is based on the provision that the "conclusions or award aforesaid shall be and become the judgment of the Supreme Court or the Court of Appeals aforesaid, and said courts shall make and render such further order, judgment, or decree thereon as may be necessary and proper to make said award effective." (Const., sec. 7.) It is said that the act takes away from the Supreme and Appellate Courts cases of which they had acquired jurisdiction, and that the section just cited requires of those courts, as a ministerial duty, to enter as their judgment the award of others in those cases. Certainly, although a case is pending in an appellate tribunal, it may be disposed of by consent. It is of not infrequent occurrence that cases are so disposed of, and a consent decree entered in the Supreme Court. That court will, of course, in no instance enter a judgment beyond its jurisdiction in the particular case, and will examine such consent judgments to see that they are such as it may properly enter; but with this qualification, the award of the commission, like other judgments by consent, may be entered up.

In regard to the requirement that the award shall be and become the judgment of the court, it is doubtful whether the statute means more than the statute on the subject of arbitration which has been in force since 1846, and which provides

as to a statutory award that "judgment shall be entered thereon at the first regular term thereafter." (Paschal's Dig., art. 66; Rev. Stats., art. 49.) Under this statute, an award in compliance therewith, and not impeached for sufficient cause, is, as of course, entered up as the judgment of the court. (Forshey v. Railroad Co., 16 Tex., 516, and numerous other cases in our reports.)

It is not perceived that the requirement that the award shall be and become their judgment imposes on the courts a duty more imperative or ministerial than that long imposed on and exercised by the District Court. Nor are we able to see that there is any inherent difference in the cases arising, as has been suggested, out of the fact that the jurisdiction of the Supreme Court and Court of Appeals is exclusively appellate.

The statute is evidently modeled after similar statutes in the State of Tennessee, one of which, providing for cases on the docket at Nashville, reads: "The reports and conclusions to become the judgment and decree of the Supreme Court;" and the other, passed on the same day, providing for cases on the docket at Jackson, reads: "Which decisions or awards shall become and have the force and effect of judgments or decrees of the Supreme Court, subject, however, to the approval or disapproval of said court." (Public Acts, 14th Gen. Assembly of Tenn., ch. 51, p. 67; Id., ch. 69.) It would seem that the qualification expressed in the latter statute was regarded as implied in the first; and we are inclined to the opinion that if there were a constitutional objection to our own statute, otherwise, it might, in order to support it, be construed as impliedly leaving the award subject to approval as to its validity. The statute does expressly leave to the Supreme and Appellate Courts to determine what "further order, judgment, or decree thereon may be necessary or proper to make said award effective."

On the whole, we have been unable to see that the Constitution either expressly or impliedly prohibits the creation of the "commissioners of appeals," or that the jurisdiction or

dignity of the Supreme and Appellate Courts is encroached upon by requiring them to enter up as their judgments such valid awards as the commission may regularly make.

MOTION GRANTED.

[Opinion delivered October 22, 1879.]

BONNER, ASSOCIATE JUSTICE (concurring).—The embarrassment in the proper disposition of the important questions arising in this case, is greatly increased by want of unanimity of opinion in all the members of the court.

I concur in the decision that the statute under consideration is constitutional, at least to the extent of the principal object intended by the Legislature—the creation of a commission of arbitration and award.

The question whether, under our Constitution, a new court could be created having coördinate powers with the Supreme Court, does not arise in this case, and no opinion is intended to be indicated on this question, though under a Constitution not very dissimilar to ours, the Supreme Court of Appeals of Virginia held that the Legislature had the constitutional power to create such a court. (Sharpe v. Robertson, 5 Grat., 518.)

In our opinion, the commission provided by the statute, though having many of the attributes, is not technically a court, as it lacks at least two essential ingredients—a certain fixed jurisdiction, none being given except by the express consent of both parties, and the power to enter up or enforce its awards as judgments. It is more properly, what it purports to be, a commission of arbitration and award.

Independently of the implied power of the Legislature to pass laws for this mode of settlement of controversies, our Constitution gives it in express terms.

Although at common law arbitrators were unofficial persons selected by the parties, we think it in the power of the Legislature to provide for statutory arbitrators, to be selected from a class learned in the law, and that, in their proceedings,

they shall be governed by certain rules and regulations; and it certainly should be no objection that such as usually obtain in the practice of the courts, and which have been found by experience to promote the ends of justice and the dispatch of business, have been provided.

The commission under consideration is not an arbitrary one, to which litigants are forced to submit their matters of difference, but one which can act only by the express consent of the parties. This express consent gives validity and vitality to the statute.

We cannot perceive any substantial difference between such a judgment and that of other agreed judgments, which it is a common practice to enter in this court; neither can we perceive why, on principle, even after appeal, a question of law or of mixed law and fact cannot, by express consent, be submitted to arbitration, as well as a simple question of fact.

That questions of both law and fact may be submitted to arbitration, is the practical effect, at least, of the arbitration and awards provided by statute for inferior courts and at common law; and such awards, under the statute and at common law, when made under a rule of court, are, as is provided by the statute in question, enforced by the judgment of the court having jurisdiction of the case.

The provision in the statute, that the award shall be made the judgment of this court, without the further provision that it shall be subject to its approval, may give occasion to embarrassment should the commission return an award which might be either without the jurisdiction of the court or the issues as made by the record. Should such a contingency arise, it will have to be met and disposed of as will best comport with the just rights of the citizen and the duty and dignity of the court. But the bare possibility of such a conflict is not, in our opinion, sufficient to defeat the principal object sought by the statute—the speedy administration of justice by the submission of matters of difference to arbitration, and particularly as the award, if not authorized by the law or the case as made

by the parties, might, under well-established principles, be held not binding.

That provision of the law which prohibits the publication of the opinions of the commission, and declares that they shall have no force or effect as authority or precedent, but shall be the law of the particular case only, will prevent conflict in the decisions of the court of last resort. And should there be error in the award, it is but the judgment of that case as agreed upon by the parties themselves.

Statutes nearly similar in the State of Tennessee have received the implied sanction of the Supreme Court of that State by having been acted upon by it.

It has ever been the policy of Texas to settle matters of difference by conciliation and award, as shown by provisions in her several Constitutions, by an act of her very first Legislature, and by repeated decisions of this court.

The statute was passed to remove a great and growing evil, and although it should not be upheld on the plea of necessity, if unconstitutional, yet this should demand for it a careful and anxious consideration.

It was said by Chief Justice Marshall, in Fletcher *v.* Peck, 6 Cranch, 128, that, to authorize a court to declare a law unconstitutional, "the opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

Although the statute under consideration is very far from what we would have asked or expected, yet I have not such a clear and strong conviction of its invalidity as to declare it unconstitutional, and feel it my duty to give my doubts in favor of the action of the Legislature, and which has received the sanction and approval of the Executive.

CHIEF JUSTICE MOORE (dissenting).—The action asked in this motion necessarily brings in question the constitutionality of the act of July 9, 1879, entitled "An act to create a commission of arbitration and award and define the powers and

duties thereof, and to make appropriation to pay the salaries of the judges thereof." Being unable to concur in the conclusion of a majority of the court holding it to be a constitutional enactment, a proper respect for the court as well as the coördinate departments of the government by which the law was enacted, requires that I should state some of the grounds which lead me to a different and contrary conclusion from that reached by them.

To facilitate inquiry regarding the constitutionality of a law, it is certainly appropriate, if not absolutely necessary, to ascertain under what particular section or clause of the Constitution the power or authority to enact it is claimed to be derived by those from whom it emanates and by whom its constitutionality is maintained. On this point, in regard to the law here in question, there is, in the opinion of the majority of the court, no uncertainty; for while some of those who maintain its constitutionality claim that the authority for its enactment is to be found in section 1 of article 5 of the Constitution, which recognizes the authority of the Legislature to establish other courts than those enumerated in the Constitution, the court maintains its constitutionality under section 13 of article 16 of the Constitution, which reads: "It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial."

"In our opinion," says Gould, J., in the leading opinion on this motion, "the commission is not a court." Again: "The act creating it purports to create but a commission of arbitration and award," having evident reference to that section of the Constitution making it the duty of the Legislature "to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial." And he again emphatically repeats: "In our opinion, the commission is not a court, but a board of referees or arbitrators for cases in the Supreme and Appellate Courts." And says Bonner, J.: "The question whether, under our Con-

stitution, a new court could be created, having coördinate powers with the Supreme Court, does not arise in this case, and no opinion is intended to be indicated on this question. * * * In our opinion, the commission provided by the statute, though having many of the attributes, is not technically a court. * * * It is more properly, what it purports to be, a commission of arbitration and award."

Nor can it be questioned by any one familiar with the legislative proceedings which resulted in the enactment of this statute, that the majority of the Legislature doubted the authority to accomplish the object intended to be effected by it under section 1 of article 5 of the Constitution; but if this could be done without a change of the organic law, it could only be done by a law passed in obedience to, and under authority of, section 13 of article 16 of that instrument,—for, as is well known, the bill which led to the enactment of this law did not originate in a supposed necessity for further legislation to enable parties to submit their differences to arbitration, although a similar provision is to be found in every Constitution which has been adopted in this State since it became an integral part of the American Union, but from the universally recognized fact of the necessity of relieving the Supreme and Appellate Courts from an accumulation of business believed to be "so great as to prevent, in ordinary course, that speedy determination to litigation which is essential to justice."

The bill, as originally introduced, was professedly to create "a Court of Errors," to which cases pending in the Supreme and Appellate Courts might be referred, and had no word or phrase in it indicating the necessity for or intention to make additional provision to that already existing, (by the statute passed by the first Legislature which assembled, in 1846, after this constitutional provision was ingrafted in the organic law of the State,) for enabling parties electing that method of trial to submit their differences to arbitration. It may be worthy of remark, that while the bill originally introduced was so changed as that authority for its enactment is not claimed to

be warranted by the article of the Constitution creating the judicial department, but by an entirely distinct section referable to the general power of the legislative department, still, so completely had the necessity for à more prompt dispatch of the accumulated business before the appellate courts than can possibly be had under their present organization taken hold of the legislative mind, that the same reason is given for this law, professedly enacted in obedience to a constitutional requirement, wholly independent of the fact whether there is an accumulation of business in the courts or not, as was urged in support of the bill in its original form, and when it purported to be framed under a different article of the Constitution.

But while the object and purpose of the Legislature may aid in the proper interpretation of a law when there is doubt regarding its proper construction, its constitutionality is not to be determined by the motives of those by whom it was framed and enacted, but by the fact whether, as it must be construed, it meets and conforms to the constitutional requirement applicable to it. Let us see, then, whether this act under which this motion is made is, in fact and in truth, a law necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial, or for the creation of a court or judicial tribunal.

Before attempting an analysis of the act, it may not be amiss to call attention to some of the rules of constitutional interpretation by which we should be guided in ascertaining its proper import, and the definition of some of the words and phrases which are used in it, the accurate meaning of which is essential to its due interpretation and correct construction.

"Constitutions are to be construed," says Judge Cooley, "in the light of the common law, and of the fact that its rules are still left in force." That in judging what the Constitution means, we should keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well-understood system, which is still to remain in force and be administered, and that constitutional definitions are in general

drawn from the common law, the great source of preëxisting and subsisting law. (Cooley's Const. Lim., 60.) Words must be presumed to have been used in their natural and ordinary sense. (Gibbons *v*. Ogden, 9 Wheat., 188.) Again, says Judge Cooley: "We cannot understand constitutional provisions unless we understand their history. Where we find in them technical words and words of art, we must presume these words to be employed in their technical sense." (Cooley's Const. Lim., 58.)

The term "court" is defined by Bouvier (1 Law Dic., 373) as follows: "A body in the government to which the public administration of justice is delegated."

"The presence of a sufficient number of the members of such a body, regularly convened in an authorized place, at an appointed time, engaged in the full and regular performance of its functions."

"The place where justice is judicially administered." (Co. Litt., 58*a*.)

"The judge or judges themselves when duly convened."

Courts are of various classes, according to the extent and character of their jurisdiction, their forms of proceeding, or principles upon which they administer justice. I refer specially to but one, because it may tend to show the proper construction of the title of the act under discussion. This is the Court of Assize and Nisi Prius in English law, which is held by "two or more commissioners, called judges of assize."

"The one common and essential feature in all courts is a judge or judges; so essential, indeed, that they are even called 'the court,' as distinguished from the accessory and subordinate officers. Courts of record are also provided with a recording officer, variously known as clerk, prothonotary, register, &c., while in all courts there are counsellors, attorneys, or similar officers, recognized as peculiarly suitable persons to represent the parties actually concerned in the causes, and who are considered as officers of the court and assistants to the

judges, together with a variety of ministerial officers, such as sheriffs, constables, bailiffs," &c.

An arbitration, as commonly defined and understood, is " The investigation and determination of a matter or matters of difference between contending parties by one or more unofficial persons chosen by the parties, and called arbitrators or referees." (Worcester's Dic.; Shars. Black. Comm., 16; Bouv. Law Dic., 136.)

An award is "The judgment or decision of arbitrators or referees on a matter submitted to them." (1 Bouv. Law Dic., 177.)

Now, upon examining the act in question, it will be at once seen that neither in its title nor body is it in accord with the definition of the common law, if intended to provide for the trial of differences by arbitration as heretofore known and understood, or as defined and authorized in the statutes of this or other States regulating the settlement of differences between parties in this way, unless in the State of Tennessee, to whose statutes we will hereafter refer. The title, instead of being "An act to authorize the settlement of disputes by conciliation or arbitration," as is that of the act of April 25, 1846, passed in obedience to the same constitutional provision under which it is claimed this law was framed, (which is still in force, and fully meets all the requirements of the Constitution,) is "An act to create a commission of arbitration and award and define the powers and duties thereof, and to make appropriation to pay the salaries of the judges thereof."

The tribunal created is styled in the law "Commissioners of Appeals." The commission does not consist of one or more private persons chosen or selected as arbitrators by the parties who elect that method of trial, but of three judges learned in the law, appointed "by the Governor of the State, by and with the consent of the Senate," who shall hold their offices for two years. In case of vacancy in the commission, whether before or after the reference is made, it is the duty of the Governor to appoint some one else learned in the law to fill such vacan-

cy, who shall "continue in office until the next session of the Legislature." Said commission shall hold its sessions at the same times and places as the Supreme Court. It keeps a record, may appoint a clerk, or require the clerks of the Supreme and Appellate Courts to act for it in this capacity, and has a seal. It has a "regular docket" and keeps minutes of its proceedings. Its records are entitled to the same verity as those of courts of record. It can issue writs of *certiorari* to perfect the record in cases referred to it, and compel obedience to the same by the subordinate courts from which the records come. It may issue any other process which the Supreme Court can to make parties, and it may punish for contempt. The laws and rules regulating practice and proceedings in the Supreme Court are of force in proceedings and practice before it, as far as applicable. It hears argument and pronounces its conclusions or award, *i. e.*, its judgment or decree, which cannot be reviewed or reversed by any other tribunal; but this court or the appellate court must enter and enforce such award as if it were its own judgment.

With all due respect for the opinion of a majority of the court, I confess I am unable to understand and appreciate the reasoning by which it is maintained that this law does not create a court or judicial tribunal for the deciding of cases brought by appeal or writ of error to the Supreme and Appellate Courts, but is a necessary and proper law for the deciding differences by arbitration. To my mind the tribunal created by it has, by express grant and necessary implication, all the essential forms and functions of a court of record of the highest character, while there is nothing whatever in the law from which an inference can be drawn that the subject of arbitration was in the mind of the Legislature when it was enacted, except the use of the words arbitration and award. But certainly a law creating a commission or court for the dispatch of business in the Supreme and Appellate Courts cannot be converted into a law for deciding differences by arbitration by entitling it "An act to create a commission of arbitration and awards," &c., and

calling its judgments and decrees "conclusions or awards." Had the title of the act properly indicated its real purpose and object, viz., "An act to create a court to aid in deciding causes pending on appeal or writ of error in the Supreme and Appellate Courts," while if it contained all its present provisions, though I should still be constrained to regard it as unconstitutional, I should reach this conclusion with much greater hesitation than considering it merely as a law for deciding differences between parties by arbitration.

What essential constituent of a court is withheld from the commission created by this act? But two have been indicated or suggested in the opinions of the majority of the court. Says Bonner, J.: "In our opinion, the commission provided by the statute, though having many of the attributes, is not technically a court, as it lacks two essential ingredients—a certain fixed jurisdiction, none being given except by the express consent of both parties, and the power to enter up and enforce its awards as judgments." And says Gould, J.: "In our opinion, the commission is not a court, because it acts only by consent of both parties, and even then is without jurisdiction to render or power to enforce its judgments. It has no jurisdiction, for consent cannot give jurisdiction."

I readily admit, if the commission created by this law has no jurisdiction except that which it derives from consent of parties, it cannot in any proper sense be denominated a court. With due deference, however, I suggest that the court has, through inadvertence, confounded the different character of jurisdiction exercised by courts in hearing and deciding causes. "Jurisdiction," says Judge Cooley, "is, first, of the subject-matter; and second, of the persons whose rights are to be passed upon."

"A court has jurisdiction of any subject-matter if, by the law of its organization, it has authority to take cognizance of, try, and determine cases of that description. If it assumes to act in a case on which the law does not give it authority, the pro-

ceeding and judgment will be altogether void, and rights of property cannot be divested by means of them."

"And on this point," he adds, "there is an important maxim of the law, that is to say, that consent cannot give jurisdiction; by which is meant that the consent of parties cannot empower a court to act upon subjects which are not submitted to its judgment by the law. The law creates courts, and with reference to considerations of general public policy defines and limits their jurisdiction, and this can neither be enlarged nor restricted by the act of the parties." (Const. Lim., 398.)

That jurisdiction of the parties may be acquired by consent, is too familiar to call for comment. That usually other means are provided by law for getting jurisdiction of the person, does not show that the tribunal before whom a cause is brought in this way cannot be a court. If so, we should be forced to hold that the Appellate Court lacks this essential element of a court, for criminal cases can only come before it by consent, or, which is in effect the same thing, at the instance of but one party to the record. And the Court of Claims, which has jurisdiction of suits against the government by its consent, though appeals may be prosecuted from its judgments to the Supreme Court of the United States, is not a court. And, by parity of reasoning, the District Court, when deciding a case against the State which it could not take cognizance of except by consent, should not be regarded as acting as a court.

Jurisdiction of the person being merely essential to invoke the exercise in the particular case of the power conferred by the Constitution or law upon the court to hear and decide the cause, the rules and regulations by which it is to be acquired are matters of legislative discretion, and may be either by service of process or by consent.

It remains to be considered whether the commission is given, by the law of its creation, power or authority to hear and decide causes, when brought before it by consent of parties. This question is, I think, plainly answered by the law. It

reads: "Said commission shall have power to hear and pronounce award upon all civil cases now or hereafter pending in the Supreme Court or Court of Appeals, wherein the parties or their attorneys may consent in writing to the reference thereof to said commission." The subject-matter of jurisdiction conferred or attempted to be conferred by the law upon the commission, is the power to hear and pronounce conclusions or, in other words, judgments in all civil cases now or hereafter pending in the Supreme Court. It cannot exercise this jurisdiction except in cases brought before it in the manner prescribed by law; nor can any other court do so. This court has jurisdiction to review the judgments of the District Court in all civil cases of which they have original or appellate jurisdiction; but it can exercise this jurisdiction in such cases only as are brought before it by one of the parties by appeal or writ of error. Yet its jurisdiction of the subject-matter is not dependent upon the appeal or writ of error, and would exist and inhere in it, if no case had or should ever be brought before it. Just so with the commission, if this law is constitutional. The power to hear and decide all civil cases now or hereafter pending in the Supreme and Appellate Courts, which, as I have said, is the subject-matter of its jurisdiction, is conferred by the law of its organization to be exercised in a particular case, when invoked by the consent in writing of the parties or their attorneys.

Does the fact that the commission does not carry into effect and enforce its awards or judgments by a writ or process emanating directly from it, warrant the conclusion that it is not a court? This, I submit, while a usual attribute of courts, is not absolutely essential to their existence. Familiar instances in which courts do not execute their judgments will readily suggest themselves to the mind.

Judgments of the District Court against administrators are not enforced by its process, but are certified to the County Court for enforcement. The Court of Claims as originally organized could give no judgment which it could execute, but

reported to Congress the material facts it found established by
the evidence, with its opinion thereon, in the nature of a judg-
ment, for its performance. (Bright. Dig., 198–200.) By an
amendatory act of March 3, 1863, in addition to its original
jurisdiction, the court is authorized to take cognizance of set-
offs, counter-claims, claims for damages liquidated or unliqu-
dated, or other demands, on the part of the government against
the claimant. If the judgment go in favor of the government,
it shall be filed in the office of the clerk of the proper District
or Circuit Court of the United States, and shall *ipso facto* be-
come and be a judgment of such District or Circuit Court, and
shall be enforced in like manner as other judgments are.

If the judgment shall be in favor of the claimant, the sum
thereby found due the claimant shall be paid out of any gen-
eral appropriation made by law for the payment of private
claims, on presentation to the Secretary of the Treasury of a
duly-certified copy of said judgment. Another illustration
may be found in the practice, when matters of law and equity
are cognizable in separate forms and questions of fact are re-
ferred by the chancellor (it may be by consent of parties) to
a court of law for determination by verdict of jury. The court
of law neither enforces nor pronounces a judgment on the facts
it finds, but certifies them to the chancellor, that effect may be
given them by him. Yet certainly it will not be said that the
tribunal hearing the evidence and ascertaining the facts does
not, when doing so, act in the capacity of a court.

But suppose I am mistaken in holding that this act, if con-
stitutional, creates a court: it does not follow that it is a
necessary and proper law for deciding differences by arbitra-
tion. Does it enable parties desiring that method of trial to
so decide their differences? In other words, are the commis-
sioners appointed by the Governor, by authority conferred
upon him by this act, arbitrators? and is the subject-matter of
their duty the deciding of differences between parties? If not,
this act, I must infer, can, in the opinion of the court, furnish
no ground for granting this motion. The definition of the

word "arbitration," previously given, expressly states that an arbitrator is an unofficial person chosen by the parties. The very gist and vital principle of arbitration is that parties may select the arbitrators by whom their differences shall be decided. They may elect whether they are to be controlled by technical rules and principles of law in rendering their judgment or award, or by their views of the justice of the matter in dispute; and, unless it is otherwise, it is generally presumed that the determination of the matter is left to the judgment of the arbitrators,—sound men, who are not controlled by technical rules of law, but are at liberty to apply the general principles of justice to the facts of the case. Under this act the parties have no voice in selecting the commissioners. They are public officers appointed by the Governor, confirmed by the Senate, and commissioned by the State. They must be learned lawyers, and are controlled in their action by the same rules and principles as the Supreme and Appellate Courts would have been if the cases were to be decided by them. The only volition that parties have in the matter is, that, in view of the fact that the accumulation of business in the Supreme Court and Court of Appeals is so great as to prevent, in ordinary course, that speedy determination to litigation which is essential to justice, they have the privilege of having their suit decided by the Commissioners of Appeals, or by the Court of Appeals, if the case is pending in it, or the Supreme Court, if it is pending here; or, in other words, of saying whether it shall be decided by three judges elected by the people, or by three others appointed by the Governor.

Nor can it be said with any more propriety that this law provides for the deciding of differences between parties, than that it authorizes the selection by them of arbitrators for their decision. True, the determination of the matter in controversy may ultimately result as a consequence of the award rendered by the commissioners; but in an arbitration, this is the direct object and end in view.

It is an elementary rule, that an arbitration will be set aside

unless it is a finality. So fundamental is this principle, that, until statutes authorized awards to be made judgments of court, an agreement to submit matters in dispute in a pending suit to arbitration operated as a discontinuance of the action; and now, when reference is made by order of court, the case remains on the docket merely to make the award, if legal, the judgment of the court. But the commissioners do not act directly upon, or determine the facts of the case, or generally review the evidence relied upon by the parties for the determination of their differences. In the decision of matters of fact, the most vital and essential point in trials by arbitrators who are substituted for judge and jury, the commission must, acting under the rules governing the Supreme Court, be controlled by the finding of the court below. The subject-matter of which the commission has jurisdiction is, simply whether or not there is error in the judgment referred to it by the agreement of the parties. It is authorized, in the cases going before it, to perform precisely the same function and exercise the same jurisdiction as the Supreme and Appellate Courts, if the cases had not been referred, except in the manner of enforcing their judgments; and it performs and exercises none other. By its judgments, which the Supreme and Appellate Courts are required to adopt and enforce, it may affirm or reverse the judgments of the District and County Courts; and in the cases reversed, the court below must receive from it the law of the case for all future proceedings had in it, if, indeed, its decision will not be the law for this court, should the case be afterwards brought to it on a subsequent appeal.

Suppose, in a case referred to the commission, the sole question for decision is, whether the plaintiff's petition or defendant's answer is sufficient to warrant the introduction of evidence excluded by the court below, or whether evidence admitted should have been excluded, and the commission should reverse and remand the case. I ask, does the award decide differences between the parties in the sense of the Constitution, when it directs the Legislature to pass laws for the settlement of dif-

ferences between parties by arbitration? Certainly not. It announces a rule of judicial procedure for the guidance of the lower court. But, I ask, can a question touching the rules of pleading and practice by which the courts are, or should be, governed, separate and apart from the differences between the parties, be referred by consent to arbitrators? and can their award or conclusion be made the law of the case in its future progress? Such a proposition would certainly be novel, if not startling. If adopted, the rules by which the courts would be governed, and the law by which cases would be decided, would not be searched for in reports and precedents, but in agreements of parties and awards of arbitrators. If parties desire to settle their differences in this way, they may leave to the judgment of the parties selected by them, to say by what rules and principles they will be guided, in ascertaining and determining them. But they cannot, by consent or through the action of arbitrators, prescribe rules by which a court must govern its judicial action in the conduct and decision of cases.

Although the majority of the court deny that such is its proper construction, still, since, as I insist, the legal effect of this act, if a valid and constitutional law, is to create a court, and some of its advocates maintain its validity upon this ground, it is proper that I should consider it in this light. The length to which this opinion has been already protracted will forbid any attempt to elaborate my views regarding it from this stand-point. I concede that the Legislature may create other courts than those named in the Constitution, and that they need not necessarily be inferior courts, as under the Constitution of 1845. (Const. of 1845, art. 4, sec. 1.) But, in my view, the jurisdiction of such courts as may be created by the Legislature must not touch upon or interfere with that conferred by the Constitution on the courts established by that instrument. I have heard it insisted upon by some, that the entire judicial power is apportioned by the Constitution among the different courts named in it, and therefore to say that none of this juris-diction can be conferred on courts established by the Legisla-

ture, is in effect to deny to the Legislature the power to create other courts. But unfortunately such is not the case. If it was, the judicial organization of the State would be far more complete, if not more satisfactory, than it is. Immediately after the adoption of the Constitution, it was held by this court that no court created by it was given jurisdiction of *habeas corpus* where the parties restrained (minors of tender age) were not held in custody on a charge of crime. It has been also decided that no court has jurisdiction, by the Constitution, to take cognizance of and decide cases of contested elections. (Williamson and Lane, Tyler, 1879.) Other matters of which jurisdiction might be conferred by the Legislature without interfering with the constitutional jurisdiction of existing courts, might be readily suggested. But if I concede that the Legislature may confer upon courts created by it concurrent jurisdiction with the constitutional courts, this can only be when exclusive jurisdiction has not been, expressly or by clear implication, conferred on the constitutional court. That the jurisdiction vested by the Constitution in the Supreme Court is exclusive, and cannot be conferred upon or exercised by any other constitutional or legislative tribunal, without a violation of the organic law, seems to me to be plain beyond all doubt or question. True, the Constitution does not in direct words say that there shall be but one, or only one, Supreme Court, or that the jurisdiction conferred upon it shall be exercised by no other court; but this is certainly its meaning.

To more certainly attain the ends of justice, the exercise of judicial power by our Constitution, as is perhaps now universally the case in the American system of government, is committed to courts of original and courts of appellate jurisdiction. Certainly one of the great and essential objects and ends of appellate jurisdiction is to secure harmony and uniformity of decision throughout the State, and that the law shall be interpreted and construed alike in every part of it, and between all parties who invoke its aid and protection. This could not be

if there were more than one appellate court of last resort for the decision of the same class of cases. Considering the object in view in the distribution of judicial power among the courts created by the Constitution is that stated, it is as distinctly declared that appellate jurisdiction of civil cases, of which the District Courts have jurisdiction, is as exclusively vested in one Supreme Court as if it had been so said in direct and unequivocal terms. But if I am not correct in this conclusion, still there are other insurmountable objections to the constitutionality of this act. It not only, as I think, interferes with the exclusive constitutional jurisdiction of the Supreme Court, but it also requires of it the exercise of functions not conferred upon it, but, indeed, expressly withheld from it, by the Constitution, and inconsistent with its duty and dignity as the court of last resort in the State in civil causes. The first sentence of section 3 of article 5 of the Constitution reads as follows: "The Supreme Court shall have appellate jurisdiction only, which shall be coëxtensive with the limits of the State, but shall only extend to civil cases, of which the District Courts have original or appellate jurisdiction." Jurisdiction is said to be the power to hear and determine a cause; and appellate jurisdiction, with us, is to hear and determine whether there is error in the judgment, and if so, to give such judgment as the law and fact warrant or demand. It certainly follows that the mere entry of a judgment of some other tribunal, without hearing or determining the cause or question to be decided, or having authority or discretion in entering such judgment, is not the exercise of jurisdiction, but the discharge of a mere ministerial duty. It matters not whether the commission of appeals is a court or a board of arbitrators. Whether their report is regarded as a judgment of a court or an award of arbitration, the entry of its judgment or award cannot be regarded as the exercise of appellate jurisdiction by the Supreme Court, but the performance of a simple ministerial duty imposed by the statute without authority and in violation of the Constitution.

It is a fallacy to say that the Supreme Court may with as much propriety be authorized to enter the award of an arbitrator as its judgment as the District Court. The latter tribunal is a court of original jurisdiction, and by the common law, as well as statute, it has jurisdiction to enforce the award of arbitrators. This may be done by an action on the award or on the bond given for compliance with it, or by process of contempt where the submission is under a rule of court, or by entry of the award as a judgment of court when authorized by statute, if its constitutional jurisdiction admit of it. In either case the court may exercise judgment and discretion, and should only enforce the award where it is right and proper that it should do so, under the rules and principles of law applicable to such proceeding. And when a judgment of one court is to be entered and enforced in another, as, for instance, a judgment of the District Court in the County Court, or of the Court of Claims in the Circuit or District Court, as heretofore referred to, this is always done in a court of original jurisdiction, to which such power may be legitimately given by the Legislature, and where the enforcement of the judgment may be made a duty of the court directed to execute it. But as this is not the exercise of appellate jurisdiction, it cannot be conferred upon the Supreme Court; nor will it relieve us from the dilemma to hold, as the court intimates may be done, that so much of the law as requires of this court to enter the judgment or award of the commission without inquiring as to its correctness, as its judgment, is unconstitutional; for then the court, before entering the judgment or award, would have to pass upon and consider its correctness. But this it cannot do. The Constitution limits its jurisdiction to cases of which the District Court has jurisdiction; that is, to judgments of the District Court. It would be mere quibbling to say that the Supreme Court may review judgments of the commission, and reverse or affirm them merely because the judgment upon which the commission acts was previously rendered by the District Court. And

for the Supreme Court to altogether disregard the award of the commission and affirm or reverse the judgment of the District Court, would render the entire law nugatory. While a law may be unconstitutional in part, if the unconstitutional part of it can be separated from that which is constitutional, and the latter object and purpose upheld and enforced without the aid of the former, this will be done. But the finality of action by the commission on the appeal or writ of error in cases referred to it, though there may be no finality in the difference or controversy between parties, is the leading and central idea of this statute. Strip it of this feature, and there is nothing to lead us to suppose that the act would have received the sanction of the Legislature.

But it is said that we have precedent to sustain the act. This I seriously question. Indeed, the alleged precedent, to my mind, entirely fails to afford it any support whatever. "The question," says Bonner, J., "whether, under our Constitution, a new court could be created, having coördinate powers with the Supreme Court, does not arise in this case, and no opinion is intended to be indicated on this question, though under a Constitution not very dissimilar to ours, the Supreme Court of Virginia held that the Legislature had the constitutional power to create such a court." (Sharpe *v.* Robertson, 5 Grat., 518.) As the act of the Legislature of Virginia, adopted in 1847, I believe, and passed upon by the Supreme Court of that State in the following year, though referred to with seeming approval, is not relied on to maintain the statute here in question, it will suffice for me to say that the Constitution of Virginia adopted in 1830, in force when its act was passed, differs from ours, in regard to the judicial power given to the Supreme Court, in a most marked degree.

Section 1 of article 5 of that instrument reads: "The judicial power shall be vested in a Supreme Court of Appeals, in such Superior Courts as the Legislature may from time to time ordain and establish, and the judges thereof, in the County Courts, and in justices of the peace. The Legislature may also

vest such jurisdiction as shall be deemed necessary in corpora-
tion courts, and in the magistrates who may belong to the
corporate body. The jurisdiction of these tribunals and of the
judges thereof shall be regulated by law," &c. A perusal of
the case referred to will show that great stress was placed, by
the judges maintaining the constitutionality of the act, upon
the authority given in the Constitution to the Legislature to
regulate the jurisdiction of the supreme as well as the other
courts.

More weight, however, is attached to the alleged precedence
for this act alleged to be found in the legislation of the State
of Tennessee.

"Statutes," says the same judge, "nearly similar in the State
of Tennessee have received the implied sanction of the Supreme
Court by having been acted upon by it." But when and where
these alleged similar laws of the State of Tennessee have been
acted upon by the Supreme Court of that State, we are not
told. The weight to be attached to them as alleged prece-
dents for the Legislature and courts of this State would cer-
tainly be more readily determined if we knew what had been
the action of the Supreme Court of that State under them. I
have looked in vain through all the reports of the Supreme
Court of Tennessee to see if their constitutionality had ever
been the subject of discussion before that learned court, but
found not the slightest allusion whatever to them. And I
venture the opinion that whatever action may have been taken
in the Supreme Court of Tennessee under them, when exam-
ined will be found to be very different from the action required
of this court by the act here in question, notwithstanding the
fact may be, as stated by Judge Gould, that the statute here in
question "is evidently modeled after similar statutes in the State
of Tennessee." How closely the model has been followed, or
what may be the effect of a departure from it, will be more
readily seen and determined by a comparison of these alleged
precedents with the act of this State supposed to be modeled
upon them.

Before attempting this comparison, it may be well to observe that there is, as with Virginia, a marked difference between the jurisdiction of the Supreme Court of Tennessee and that of this State. We have already quoted the Constitution of this State bearing on the subject. Section 2 of article 6 of the present Constitution of Tennessee says: "The jurisdiction of this court [*i. e.*, the Supreme Court] shall be appellate only, under such restrictions and regulations as may from time to time be prescribed by law; but it may possess such other jurisdiction as is now conferred by law on the present Supreme Court." What jurisdiction had been conferred by law upon the previous Supreme Court is not stated, and I have no means of ascertaining. And whether this provision can in any way affect the constitutionality of the law, I cannot say.

The statutes of Tennessee referred to by the other members of the court were both passed March 21, 1877. The first is entitled "An act to provide for an arbitration commission at Nashville, Tennessee." The title of the second is, "An act to provide a special commission of arbitrators for hearing and trial of causes pending in the Supreme Court." The first enacts "that the Governor shall appoint and commission, three persons learned in the law, to act as a special commission, in hearing the causes pending on the docket of the Supreme Court at Nashville, and preparing their conclusions therein, to be reported and submitted to the Supreme Court at the December Term, 1877; said reports and conclusions to become the judgment and decrees of the Supreme Court." (Acts 1st sess. 14th Gen. Ass. of State of Tennessee, ch. 51.)

Now, does this require the Supreme Court to make the conclusions of the commission its judgment without examination or the exercise of judgment? I think not. The most that can be said is, that the language of the act is not clear and specific either way. It is open to construction. And certainly if it must be pronounced unconstitutional if it requires the Supreme Court to enter the conclusion of the commission as its judgment without consideration or approval, it would not

be thus construed, but rather that the conclusions were to be submitted to the consideration of the court, that they might, if approved by it, be entered as its judgments. But this interpretation does not depend upon the construction of the equivocal language of this act alone; the other act, passed on the same day and intended for dispatch of the accumulated business before the court at Jackson, relieves the matter of all doubt or uncertainty. This last act reads: "That the Governor of the State shall appoint three persons of established character of learning in the law and of personal integrity, who shall compose a 'commission of arbitration' having power to hear and determine such civil causes now or hereafter pending in the Supreme Court of Tennessee, at Jackson, as may be submitted to said commission by the Supreme Court, with the consent of the parties on both sides; which commission shall report its decisions or awards to the Supreme Court when in session, which decisions or awards shall become and have the force and effect of judgments or decrees of the Supreme Court; subject, however, to the approval or disapproval of said court." (Id., ch. 69.) Now, if there is any doubt as to the proper construction of the first of these statutes, [as all acts *in pari materia* are to be taken together, as if they were one law, \*.\* \* because they are to be considered as founded upon one system and having one object in view, (Dwar. on Stat., 569,)] when we look at the second the doubt is dissipated; and there can be no hesitancy in saying that the jurisdiction or authority to finally decide the cases referred to the commissioners was not attempted to be taken from the Supreme Court.

The subsequent legislation of the same State strengthens this conclusion. On the 25th of March, 1879, after the acts referred to had expired, the Legislature passed another statute on the same subject, entitled "An act to relieve the dockets of the Supreme Court of Tennessee of the great number of cases now incumbering them, and for the appointment of a special commission," which also provides that the reports and conclu-

sions of the commission shall only become judgments and de-
crees of the Supreme Court on receiving its approval.

Now, if the Legislature had chosen to enact a statute mod-
eled in fact on these statutes of the State of Tennessee, and
had left the decision of cases brought to the Supreme Court to
it, letting it find such aid in the reports and conclusions of the
commissioners of appeals as they might afford, and the title of
the law fairly indicated its purpose, I am not prepared to say
that I should have felt it my duty to pronounce it unconstitu-
tional. But it cannot be said that such is the effect of this act
or such was its object or purpose. The final decisions of cases
submitted to it is attempted to be committed absolutely and
definitely to the commission. This conclusion does not result
from construction, but from the plain and obvious import of
the unequivocal language in which the act is couched. The
act says that the commission shall report (not submit, as in
Tennessee) its conclusions or awards to the Supreme Court,
"and the conclusions and awards aforesaid shall be and become
the judgment of the said Supreme Court,    *    * o *    and said
court shall make and render such further order, judgment, or
decree thereon as may be necessary or proper to make said
award effective." ° Lest there might be doubt as to the mean-
ing of this positive and emphatic language, and the court
might assume or think itself at liberty to question the correct-
ness of the judgment or award which it is required to enter and
enforce, it is expressly stated in the act that "all applications
for rehearing in cases referred to said commission shall be
made and determined by said commission."

I refrain from protracting this discussion further, and will
only add, in conclusion, that, after a careful examination of
the whole subject, the only conclusion which I have been able
to reach regarding it is, that the framers of the act supposed,
whether or not the Legislature could confer upon the commis-
sion jurisdiction to try causes brought by appeal or writ of
error to the Supreme or Appellate Court, the mere consent of
the parties to the reference of a case to the commission would

preclude all inquiry as to the constitutionality of the act and the validity of the decision of the commission, and because these courts may be moved to act in cases pending before them by consent of parties, the like consent would authorize them to enter and enforce as their judgments the conclusions of the commissioners, irrespective of the character of the judgment they are called upon to enter, or the nature of the jurisdiction that would be exercised in entering and enforcing such judgment.

It is unnecessary to say that such an assumption is utterly fallacious. Consent of parties cannot create a judge, or give validity to an act of a court not warranted by, or outside of, its legitimate jurisdiction. (Wynne *v.* Underwood, 1 Tex., 48; Andrews *v.* Beck, 23 Tex., 455; Winchester *v.* Ayres, 4 Iowa, 104.)

[Dissenting opinion marked "filed October 24, 1879."]