NEW AMSTERDAM CASUALTY CO. v.
RUTHERFORD et ux.
No. 12263.

Court of Civil Appeals of Texas. Forth Worth.
Feb. 8, 1930.

Rehearing Denied March 15, 1930.

Marvin H. Brown, of Fort Worth, for appellant.

Houtchens & Craik, of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted by Driver Rutherford and wife against the appellant New Amsterdam Casualty Company in the Sixty-Seventh district court of Tarrant county, seeking to set aside a ruling of the Industrial Accident Board, and to recover compensation for alleged injuries to Driver Rutherford, while

in the employ of the firm known as Quisle & Andrews Construction Company.

After sufficiently alleging the jurisdictional facts, the plaintiff Driver Rutherford further alleged that on the 11th day of March, 1927, he was an employee of the Quisle & Andrews Construction Company, a subscriber under the Workmen's Compensation Act, and that while engaged in the regular discharge of his duties, and in the regular course of his employment in Tarrant county, Tex., he was assisting in the erection and construction of a building in the city of Fort Worth, wheeling brick upon a wheelbarrow by hand into the building, and that while so engaged in the early part of the afternoon of said date, a large stone fell upon his head from the second story of the building where other employees of the construction company were working, from the effects of which plaintiff was rendered unconscious for many hours, and permanently disabled from performing any character of work whatever; that when said stone or brick struck him, his head was crushed and his skull fractured, bruised and badly injured, and his brains have been badly affected. He further specifically alleged:

"That plaintiff is now, and has been since and on account of the injuries herein complained of, suffered, and will be forced to suffer during his natural lifetime, therefrom, the following enumerated injuries in particular:

"(a) His head was crushed, and his skull was fractured, bruised, and there was a great gash cut therein, and plaintiff was rendered unconscious from the blow occasioning the said injury, and from the injuries and the effects thereof plaintiff Driver Rutherford suffers constant uneasiness in and about his head, and has constant headache.

"(b) That by reason of the blow to his head, the said Driver Rutherford, received a severe shock to his nervous system, and his nerves have been shattered, and he has been rendered a nervous wreck, and by reason thereof, he is very nervous, and is frightened and disturbed from the slightest cause and without any cause or provocation whatever.

"(c) That his legs, for some cause not fully known to him, but which said cause grew out of the accident, and the injuries occasioned therefrom, will not function, and he cannot walk except by the aid of a walking cane, or other help and assistance, and the nerves and tendons of his said legs have become drawn to such an extent that he can barely creep around, and he says that he cannot more fully describe the injuries which directly occasion such condition, and has described the same as best he can, but he does not say that such condition was brought about in whole by the blow which he received as aforesaid, and its attending effects, and if not the whole cause, such was a contributing cause of said injuries.

"(d) That he cannot use his arms, except in a very limited way, and that the nerves controlling the same have been so badly damaged and injured by the blow and injuries, that he can hardly use his said arms at all, and then only in a limited way and manner, except under the most intense pain.

"(e) That since and on account of said accident and injuries herein complained of, said Rutherford often becomes sick and nauseated, in which condition he remains for a long time, and which occasions are frequent."

The plaintiff further alleged: "That at the time of the injuries of the said Rutherford, as aforesaid, and for more than twelve months prior thereto, the said Rutherford was earning and capable of earning an average weekly wage of the sum of $19.20 upon which plaintiff's claim is predicated and plaintiff Driver Rutherford being totally and permanently incapacitated and disabled from doing any character of work whatever, by reason of his said injuries, is entitled to compensation at the rate of 60% of said amount or the sum of $11.52 per week for a period of 401 weeks from and after his said injuries, totaling the sum of $4,619.50."

The plaintiffs' prayer was for the recovery of the total sum of $4,619.50, to be paid in a lump sum, with such legal deductions as the defendant might be entitled to have in a lump sum settlement; but in the alternative, and in the event the court determined that the plaintiffs were not entitled to a lump sum judgment, then they sought judgment for total and permanent incapacity from doing any work, to be paid by the week at the rate of $11.52 per week for the fixed period of 401 weeks, beginning with the 11th day of March, 1927.

The defendant casualty company answered by a general demurrer and a general denial, and the case was submitted to a jury on special issues, which were answered favorably to the plaintiff, and upon the answers so returned judgment was entered in favor of Driver Rutherford and wife, jointly, against the appellant casualty company for total disability covering a period of 401 weeks in a lump sum, awarding two-thirds of such lump sum to the plaintiffs and one-third to plaintiffs' attorneys of record in the case.

From such judgment the defendant casualty company has prosecuted this appeal.

When the case was called for trial, the defendant filed in due form a verified application for a postponement or continuance of the case to a later date. It was alleged that Dr. D. R. Venable was a material witness, in that he had made a scientific examination of the plaintiff for syphilis, and that he would testify that plaintiff had such disease, and that the symptoms complained of by the plaintiff in the suit are direct results of such disease. The application was made at the

first setting of the case after the institution of the suit, and it was alleged that Dr. Venable lived in Tarrant county when he made the examination, and that defendant did not know that he had later removed from the county; that defendant had requested the clerk of the court to issue a subpœna for such witness several days prior to the date upon which the case was to be called, but that the deputy sheriff handling the writ made no effort to serve it upon the witness until the case was called for trial, when for the first time the defendant learned the witness had moved to Tulsa, Okl.; that no other witness could testify to the examination made. It was further shown that the defendant, at the instance of the court, had telegraphed the witness in an effort to have him before the court, but that the witness had answered that he could not come at that time. The application in all other respects was in compliance with the statute regulating a first application for a continuance. Upon a hearing of the motion, counsel for plaintiff tendered him to the defendant for an examination by some other qualified physician, the court at the same time advising the defendant to employ some such person for the examination during the trial, for which time would be given. It further appears that the laboratory report of Dr. Venable was offered in evidence, and Dr. Ross Trigg testified that:

"A spinal puncture was made, and it showed a low spinal pressure and low cell count, and it also showed positive for Wassermann, and an indefinite gold Chloride Curve. I have in my report a notation which says, 'See the laboratory report which is attached hereto.' In that statement I am referring to the laboratory statement which was made by Dr. Venable. That report by him was made after an examination of the spinal fluid. I tapped the canal, the spinal canal, and drew out some of the fluid, and I sent it to the Terrell Laboratory for examination, and the report that he made to us showed that it was positive Wassermann, which indicated a syphilitic condition.

"The spinal fluid Wassermann is positive evidence of Syphilis, which is probably the real cause of any disability that he may possess.

"A spinal column puncture was made of Driver Rutherford. I don't remember now whether I made it or Doctor Chase made it, but it was made in my office. I probable made it myself but I would not be sure about that."

The defendant's witness Dr. I. C. Chase testified that:

"I examined the chart which was made at the instance and request of myself and Dr. Trigg by Dr. D. R. Venable. That chart I examined, and Dr. Venable is a man of ability and a man of experience.

"Q. What conclusion did you draw, doctor, with reference to that report? A. That the man was suffering from spinal syphilis."

We think the court should have granted the continuance, or at least have postponed the hearing until a later day during the term, and thus enabled the defendant to have taken the doctor's deposition; it appearing that the term extended a sufficient length of time in all probability to have taken the deposition. The evidence was evidently very material, it tending to show that material complaints made by the plaintiff in his petition were results of the disease indicated in Dr. Venable's chart. It was no answer, we think, that defendant was given an opportunity to have some other physician than Dr. Venable make an examination. It was urged by the defendant that this would cause considerable cost, and it was not made to appear that any physician of equal high standing and ability as Dr. Venable was available. We think it was of importance to the defendant that the very man who made the laboratory test should be seen and heard by the jury. Nor does the fact that Dr. Venable's laboratory report was offered in evidence fully meet the case. The testimony of Drs. Trigg and Chase was that the report showed that the plaintiff was suffering from spinal syphilis, but these physicians did not testify that they, or either of them, made the test, or was able upon their own knowledge to say that the laboratory report was correct. However, we need not further discuss this ruling, in view of the fact that there are several other errors presented by appellant's assignments which will require a reversal of the judgment below.

■■ The court, in the submission of the issues, first inquired whether the plaintiff had received "any injuries" as alleged, to which the jury answered, "Yes."

Second, whether the plaintiff was "totally disabled as a proximate result of the accident he sustained," etc. The jury answered, "Yes."

Third, whether the "injuries" would be "permanent." The jury answered, "Yes."

In propositions 4, 6, 7, and 11, appellant complains that the charge of the court is too broad, in that it admits of a jury finding of injuries not alleged, etc.

We think these propositions are well taken. Among other injuries testified to by the plaintiff, not alleged in his petition as hereinabove set out, were injuries to his side and eyes. He testified, among other things: "You asked me to describe to the jury what my ailments are, and to tell them what is the matter with me. Most of my misery is in my head and my side; this whole side feels like it is going to be paralysed, and every morning I just get up and I just go this way (indicating) for about 30 minutes, and after that I drag across the floor. * * * Last summer I thought I

380

.was going to die; my head just hurt me all the time, and it looked like I was going to go blind."

While it may be said that but one injury, to wit, the falling of a rock on the plaintiff's head, was received, yet we think that in the determination of the case the issues should not be so broadly presented as to admit of findings of serious consequences resulting therefrom not alleged to have existed. Nothing is better settled in the authorities than that the judgment can be sustained only upon both allegations and proof, and in submitting the issues the charge should be so framed as to confine the findings to the allegations. For aught that we can tell from the record, the jury may have believed that the plaintiff's side and threatened blindness were the only consequences of the falling rock that were permanent and entitling plaintiff to a lump sum settlement.

■ The fifth special issue submitted to the jury was: "What do you find from the evidence was the average daily wage of the plaintiff Rutherford at the time and before he was injured? Answer, giving the number of dollars a day." To which the jury answered: "$2.81 per day."

In propositions 5, 13, 14, and 22, appellant in various forms presents objections made by him on the trial below to the charge on the ground substantially that the evidence adduced in behalf of the plaintiff in support of this issue did not authorize a judgment in his favor. Plaintiff's pleading of his average weekly wages has been set forth in a preceding part of this opinion. He testified: "At the time I got hurt, the company I was employed by was paying me about 35¢ an hour. I commenced working for this company on a Thursday, after dinner, and I got hit Friday afternoon, after dinner. I had been working there a part of two days. * * * That just before I went to work for such company I had worked three or four months for Butcher & Sweeney at 40¢ per hour. * * * Prior to the time that I went to work for the firm of Butcher & Sweeney I had been working around cleaning houses, and doing just one thing and another. I would make 35¢ an hour doing that work. For about twelve months before the time that I was injured I had been working for from 35¢ to 40¢ per hour."

The statute (Rev. St. 1925) art. 8309, § 1, provides that:

" 'Average weekly wages' shall mean:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

No evidence was offered tending to show that appellee had been working in the employment in which he was working at the time of his injury for substantially the whole of the preceding year. Nor was there any evidence showing or tending to show the average daily wage of an employee of the same class with appellee, working substantially the whole of such preceding year in the same or similar employment. It is evident therefore that the evidence does not meet the requirements of subsections 1 and 2 of § 1 of article 8309, above quoted. Hence we must look to subsection 3 of the quotation for the rule by which appellee's average weekly wage must be determined. No attempt appears to have been made to show that the firm for which appellee was working at the time had no employee of the same class of appellee who worked for such firm for substantially the whole of the preceding year, and hence that it was impracticable to compute appellee's average weekly wages as directed in subsection 2, above quoted. In this connection, we wish to note that subsection 3 provides that where it is impracticable to compute the average weekly wage as provided in subsections 1 and 2, then the weekly wage shall be computed by the board (or trial court) in any manner that may seem just and fair to both parties, and we think the charge, as well as the pleadings, should be so framed as to authorize a finding that the circumstances are such that it is impracticable to determine the average weekly wage in the manner pointed out in subsections 1 and 2, and furthermore, if found to be so impracticable, that the finding actually returned is "just and fair to both parties." This is said in view of the fact that a very material part of the plaintiff's labor during the preceding year was, as he said, "doing odd jobs," such as cleaning yards,

gardening, etc., which authorizes the suggestion that a very considerable part of plaintiff's time was unoccupied, and which may be and should be looked to by a jury or court in determining his average weekly wage. See, generally, Texas Employers' Ins. Ass'n v. Fitzgerald, 296 S. W. 509, by Section B of the Commission of Appeals, approved by the Supreme Court, and Southern Surety Co. v. Martin (Tex. Civ. App.) 16 S.W.(2d) 929.

■■ At the request of the defendant casualty company, the court gave the following special issues, to wit:

"No. A. Were the ailments complained about by the plaintiff on November 14th, 1927, the result of plaintiff being diseased at the time?

"No. B. Are the disabilities of which the plaintiff now complains due to any cause other than the alleged accident on March 11, 1927?

"No. C. Are the ailments complained about by the plaintiff at this time the result of plaintiff being diseased at this time?"

. In connection with these three issues, the court instructed the jury: "The burden of proof is upon the defendant to establish by a preponderance of the evidence the affirmative of Special Issues Nos. A, B and C."

The charge was excepted to on the ground, among other things, that it was error to place the burden of proof upon the defendant to establish the affirmative of issues A, B, and C. Each of those issues were answered in the negative, and error is assigned here to the charge on the burden of proof. We think the assignment must be sustained. It is to be remembered that the plaintiff alleged as the basis of his right of recovery that the falling of the stone upon his head resulted in the particular injuries specified in his petition, which in turn totally and permanently incapacitated him from labor, and it is undoubtedly true that the burden was upon him to so show by a preponderance of the testimony. Any fact or circumstance which merely goes to negative any material allegation of the plaintiff's petition is admissible under the general denial. See Abel v. Maxwell Hardware Co., 28 S.W.(2d) ——, this day decided by this court, and cases therein cited.

■ Indeed, if such fact or circumstance is sufficient in weight to do no more than to overcome the preponderance, or even bring about an equilibrium in the evidence, the plaintiff is not entitled to recover. In other words, the case here is not one presenting an affirmative defense such as assumed risk, contributory negligence, and the like, but one in which it was contended by the defendant, in substance, that plaintiff's incapacity to labor was the result, not of the injury to his

head, but because of his syphilitic condition. Drs. Trigg and Chase in their testimony indicated that the laboratory test of Dr. Venable indicated a syphilitic condition of the plaintiff that would or might bring about the disabilities of which plaintiff complained.

What we have in mind may be illustrated by several opinions of our higher courts relating to the defense of unavoidable accidents. For instance, in the case of Galveston H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534, 537, it was held that the defendant was not required to specially plead that the injury complained of in that case was the result of an unavoidable accident to entitle it to have such issues submitted to the jury. The court said: "The evidence was not only admissible for the purpose of contradicting the witness James Washington, but as a substantial defense under the general issues; and, if believed by the jury, it would have been a complete defense to the suit."

See also the case of Rosenthal Dry Goods Co. v. Hillebrandt, 7 S.W.(2d) 521, 523. In that case, Section B of our Commission of Appeals reviewed the following charge given by the district court, to wit: " 'Do you find from a preponderance of the evidence in this case that the collision of the two vehicles in this case was the result of an unavoidable accident?' The jury answered 'No.' " The Commission, in its opinion by Mr. Justice Speer, held that the charge was erroneous in form and subject to the objections timely made by the defendant below. The court said: "It was indispensable to the plaintiff's case, and the burden was upon her to that extent, to prove that her injuries resulted from the alleged negligence of the defendant. It was not necessary that the defendant plead specially that the injuries were the result of an unavoidable accident. This was put in issue by the general denial and imposed upon the plaintiff the necessity of proving that the happening was not an unavoidable accident. This necessarily was a part of her case. While this requires the proving of a negative nevertheless it is in keeping with sound reasoning. 'Whenever the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation.' 22 C. J. p. 70, § 15."

See also Texas Employers' Ins. Ass'n v. Stephens, 22 S.W.(2d) 144, and Gulf Refining Co. v. Annie Youngblood, 23 S.W.(2d) 522, by this court.

What has been said in the cases cited we think applicable here, and the propositions presenting the question are sustained.

Nothing further now occurs to us which requires discussion, but for the reasons given

it is ordered that the judgment below be reversed, and the cause remanded for new trial not inconsistent with this opinion.