## TRADERS' & GENERAL INS. CO. v. BAILEY.

### No. 12802.

Court of Civil Appeals of Texas. Fort Worth.

April 1, 1933.

First Motion for Rehearing May 6, 1933.

Second Motion for Rehearing June 3, 1933.

Rehearing Overruled July 15, 1933.

Nelson L. Scurlock and Lightfoot & Robertson, all of Fort Worth, and J. P. Simpson, of Jacksboro, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellee.

LATTIMORE, Justice.

On September 14, 1931, appellee was injured while working for the Independent Crushed Stone Company, for which company appellant carried workmen's compensation insurance. Some dynamite exploded driving bits of rock and dirt into appellee's hand and arm and chest and knocking him unconscious, and on the trial of the case he contended it had injured the valvular action of his heart.

Without any order by the Industrial Accident Board, appellant began to pay appellee compensation of $7 a week in accordance with the terms of the Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq., as amended). In October the appellee was carried to a physician of the appellant's choosing who told appellee that, in his opinion, he (appellee) would suffer about eight weeks more of disability.

Appellee thereupon suggested that he would settle in full for $100, and signed a compensation settlement agreement on October 8, 1933 as follows:

"Compromise Settlement Agreement.

"Board No. ———
"W. M. Bailey, Employee, vs. Independent Crushed Stone Co. Employer. Traders & General Insurance Company, Insurance Company.

"Whereas, on or about the 4th day of September, 1931, W. M. Bailey sustained injury while employed by Independent Crushed Stone Company, and on said date said Independent Crushed Stone Company was insured under the Employers' Liability Act by the Traders & General Insurance Company, and

"Whereas, the facts and circumstances connected with and surrounding the inflic-

tion of said injury, make the liability of the Traders & General Insurance Company uncertain and indefinite, or incapable of being satisfactorily established, as is made apparent from the following:

"(Make statement of appropriate facts in this space.)

"Claimant alleges to have sustained serious and permanent injuries to his left hand, left arm, head, back, left side, as well as numerous other parts of his body while employed by Independent Crushed Stone Company on or about September 4, 1931.

"Claimant further contends that he is not able to perform his usual duties in as satisfactory a manner as prior to the injury, and will always be hindered to a great extent in the performance of any nature of manual labor, and while at this time the extent and duration of his injury and disability is unknown, there is a possibility of this injury resulting in permanent total disability.

"The Insurance company had paid claimant compensation for a period of four weeks at rate of $7.00 weekly but deny that they owe claimant any further sum, and in fact deny each and every allegation of claimant.

"Insurance Company further contends that claimant is not disabled to the extent he claims and that he is able to perform the same work now that he has ever been able, and that he has only a small degree of permanent disability, if any.

"Whereas, the nature, extent and duration of said injury is uncertain and indefinite or incapable of being satisfactorily established, as is made apparent from the following:

"(Make statement of appropriate facts in this space.)

"In view of the questionable character of this employee's claim, both from the standpoint of liability and the nature and extent of injury, the parties hereto, in order to save the costs of litigation, have entered into an arbitrary compromise settlement, whereby the claimant understands and agrees that by his acceptance of the amount hereinafter mentioned, the Insurance Company will be fully and finally discharged and released from any and all claims on account of this employee's alleged injury, and for any medical expense not authorized by the Insurance Company, whether such expense was incurred in the past or to be incurred in future.

"Claimant admits in making this settlement that he is not relying upon any statements, promises, or representations made by any doctor or agent of the Insurance Company, but is making this settlement on his own free will, without outside influences.

"[Signed] W. M. Bailey, Claimant."

Appellee thereupon, at the request of appellant, wrote an application to be sent to the Industrial Accident Board as follows:

"Oct. 8–1931.
"Traders & General Ins—Dallas, Texas.

"This is to advise that in my opinion I was hurt worse than the doctors seemed to think and I believe I am entitled to $100.00 Hundred Dollars and if you will pay that amount I think it would be a fair settlement.

"I feel that I will be able to go back to work in the next two or 3 weeks.

"[Signed] W. M. Bailey."

On the next day appellee wrote to the Industrial Accident Board as follows:

"Jacksboro, Texas. Oct. 9–1931.
"To State Board of Insurance, Austin, Texas.

"Dear Sirs: I am writing you in regard to my claim. I was examined by the insurance company's doctors at Dallas and they failed to show me doctor report and was urged to make final settlement and I signed up an agreement to settle for one hundred dollars ($100.00), but my mind was tired at the time and I am not sure that I am satisfied with that agreement. I would like you to make investigation of my case and if you find that I have been cheated in signing this agreement please see that I get a square deal as I feel I am not competent in making this settlement.

"Yours for a square deal, I am
"[Signed] W. M. Bailey."

The settlement being brought to the attention of the board, it, on October 10, 1931, informally let appellant know that as and when the $100 was paid Bailey it would approve the settlement. Thereafter, on October 20, 1931, appellant paid to appellee the $100, the latter signing at the time of delivery of the money this document:

"Compromise Settlement Receipt.

"Industrial Accident Board, Austin, Texas. "Notice: This receipt shall be executed in triplicate, one copy of which shall be kept by the employee, one copy by the insurance company, and one copy immediately filed with the Industrial Accident Board. Each space in receipt must be completely filled out and correctly dated at time of execution. Failure to observe above instructions will result in return of this receipt.

"Received of Traders & General Insurance Company the sum of $100.00 dollars and
Number
00/100 cents in full compromise settlement,
Number
accord and satisfactory of all compensation and claims for compensation which I have or could have against it by reason of injuries received by me on or about the ——— day of September —— 19—— while in the

employ of Independent Crushed Stone Co.
(Name of Employer)
of Jacksboro, Texas, and being the identical
(City or Town)
amount agreed upon between Traders & General Insurance Company and me in compromise settlement agreement heretofore entered into between us on or about the 8th day of October, 1931, and which has heretofore been presented to and approved by the Industrial Accident Board of the State of Texas, and to which reference is here made for all purposes.

"[Signed]  W. M. Bailey."

Thereafter the board set the matter for hearing by this notice:

"State of Texas

"Austin          October 22, 1931.
"Earle P. Adams, Chairman
"H. T. Kimbro, Mrs. Espa Stanford, Members

"In replying refer to our No. R-175

"In re;  W. M. Bailey v. Independent Crushed Stone Co.

"Traders and General Insurance Co. 115 Field St. Dallas, Texas.

"Gentlemen: This is to advise that the above captioned case has been set for hearing before the Board for Tuesday, November 3, 1931.

"The case is set:

"First, on compromise settlement agreement, and

"Second, if this is not finally approved, then on its merits to hear evidence to determine the liability of Insurance Company, degree of incapacity to claimant and all questions incident to the main issues on which the case is set, including reduction of the period with corresponding increase in rate.

"Yours very truly,
"Industrial Accident Board."

On hearing the board made this order:

"W. M. Bailey, Employee, vs. Independent Crushed Stone Company, Employer. Traders and General Insurance Company, Insurer.

"On this 19th day of November, A. D. 1931, after due notice to all parties at interest, came on to be considered by the Industrial Accident Board claim for compensation made and asserted herein by W. M. Bailey against the Traders and General Insurance Company, and the Board now finds and orders as follows:

"That it appearing to the Board a compromise settlement agreement has heretofore on the 10th day of October, A. D. 1931 been presented to it for approval, and that said Board on said date signified its willingness and intention to approve said agreement, such action on the part of the Board on the date aforesaid not being a final disposition of said claim under the laws of the State and the rules and regulations promulgated by the Board; and upon a hearing it now appearing that said compromise settlement agreement is in all things, just, fair and in accordance with the terms and provisions of the Employers' Liability Law, said compromise settlement is in all things approved.

"That said Traders and General Insurance Company having made payment of the sum of $100.00 as provided by said compromise settlement agreement and as evidenced by the regulations compromise settlement receipt filed herein, said compromise settlement is in all things approved and confirmed, and it is so ordered, adjudged and decreed by the said Board."

From this order Bailey appealed to the district court in the manner provided by the Workmen's Compensation Law, and on a trial a jury returned a verdict here quoted as to issues material to this appeal:

"12-A. Do you find from a preponderance of the evidence that the extent of the injury, if any, of W. M. Bailey, is certain? Answer: Yes.

"12-B. Do you find from a preponderance of the evidence that the extent of the injury, if any, of W. M. Bailey, is definite? Answer: Yes.

"12-c. Do you find from a preponderance of the evidence that the extent of the injury, if any, of W. M. Bailey is capable of being satisfactorily established?  Answer: Yes.

"13. Do you find from a preponderance of the evidence that Dr. C. C. Nash represented to W. M. Bailey just prior to the signing of the compromise settlement agreement in question that he, W. M. Bailey, would not sustain a longer period of disability than eight weeks from date of injury, and that he, W. M. Bailey, would have no permanent disability?  Answer: Yes.

"14. Do you find from a preponderance of the evidence that the representations, heretofore inquired about, if any, made by said Dr. C. C. Nash, if he did make any, were false?  Answer: Yes.

"15. Do you find from a preponderance of the evidence that W. M. Bailey at the time of executing the said compromise settlement agreement believed to be true said representations heretofore inquired about, if any, of Dr. C. C. Nash?  Answer: Yes.

"15-a. Do you find from a preponderance of the evidence that W. M. Bailey at the time of executing the said Compromise Settlement Agreement relied upon the said representations heretofore inquired about, if any, of Dr. C. C. Nash?  Answer: Yes.

"16. Do you find from a preponderance

of the evidence that the said representations of said Dr. C. C. Nash, if any he made, induced W. M. Bailey to execute the Compromise Settlement Agreement? Answer: Yes.

"17. Do you find from a preponderance of the evidence that J. A. Jones prior to the execution of said Compromise Settlement Agreement represented to W. M. Bailey that he, W. M. Bailey, would not have any disability after eight weeks from the date of said injury and that he would have no permanent disability at all? Answer: Yes.

"18. Do you find from a preponderance of the evidence that said representations heretofore inquired about of said J. A. Jones, if any, were false? Answer: Yes.

"19. Do you find from a preponderance of the evidence that the representations heretofore inquired about, if any, of J. A. Jones to the said W. M. Bailey were believed by W. M. Bailey? Answer: No.

"19-a. Do you find from a preponderance of the evidence that the said representations heretofore inquired about, if any, of J. A. Jones to W. M. Bailey were relied upon by the said W. M. Bailey in executing said Compromise Settlement Agreement? Answer: Yes.

"20. Do you find from a preponderance of the evidence that said representations heretofore inquired about of the said J. A. Jones, if any, induced W. M. Bailey to sign said Compromise Settlement Agreement? Answer: Yes.

"21. Do you find from a preponderance of the evidence that J. A. Jones at the time of obtaining the execution of the Compromise Settlement Agreement from W. M. Bailey knew that said representations heretofore inquired about had been made by Dr. C. C. Nash, if any, had been so made? Answer: Yes.

"22. Do you find from a preponderance of the evidence that W. M. Bailey relied upon the said representations heretofore inquired about, if any, of Dr. C. C. Nash in executing the Compromise Settlement Receipt? Answer: Yes.

"22-a. Do you find from a preponderance of the evidence that W. M. Bailey was induced to execute said Compromise Settlement Receipt by reason of the said representations heretofore inquired about, if any, of Dr. C. C. Nash? Answer: No.

"23. Do you find from a preponderance of the evidence that W. M. Bailey relied upon the representations heretofore inquired about, if any, of J. A. Jones in executing said Compromise Settlement Receipt? Answer: No.

"23-a. Do you find from a preponderance of the evidence that W. M. Bailey was induced to execute said Compromise Settlement Receipt by the said representations heretofore inquired about, if any, of J. A. Jones? Answer: No.

"24. Do you find from a preponderance of the evidence that at the time the said W. M. Bailey executed a Compromise Settlement Agreement he was ignorant of the extent of his incapacity for work, if any? Answer: Yes.

"25. Do you find from a preponderance of the evidence that at the time the said W. M. Bailey executed the Compromise Settlement Receipt that he was ignorant of the extent of his incapacity for work, if any? Answer: Yes."

The defendant, before the preparation and submission of the charge to the jury, submitted the following special issues:

"1. At or about the time the check for $100.00 was delivered to the plaintiff W. M. Bailey, did he believe that he was injured worse than J. A. Jones had indicated to or told him? Answer: Yes.

"2. At the time W. M. Bailey accepted the check from W. T. Spivey for $100.00 had he, Bailey, decided that he would not go through with the Compromise Settlement Agreement? Answer: Yes.

"3. Did W. M. Bailey, on or about October 16, 1931, after his return from Dallas, accept the defendant's check for $100.00 because he needed the money and after he had determined or decided that he would not go through with the Compromise Settlement Agreement? Answer: Yes.

"4. At or about the time the check for $100.00 was delivered to the plaintiff W. M. Bailey, did he believe that he was injured worse than Dr. C. C. Nash had indicated to or told him? Answer: Yes."

■ Let us first dispose of the effect of these findings. The jury found that the representations of the doctor were false, that Bailey believed them, relied on them, and was induced thereby to sign the October 8th settlement agreement; that Bailey was not induced thereby to sign the settlement receipt on October 20th; that Bailey did not believe Jones (the adjuster), but did rely on his statements and was induced thereby to sign on October 8th; was induced thereby to sign the receipt on October 20th, and, when he signed it and took the $100, he knew he was not going to "go through with" the settlement. As far as Jones' representations, they therefore pass out of the case. One cannot say, "I did not believe he was telling the truth, but none the less I relied on the truth of what he said." The statement carries its own contradiction. Boone v. Texas Emp. Ins. Ass'n (Tex. Civ. App.) 55 S.W.(2d) 1111.

■ Likewise, when Bailey took the $100 he was not induced by the statements of either Jones or Dr. Nash and knew in fact

that he was not going to accept the settlement if he could avoid it. He was doing the very thing he now charges appellant with doing, and worse, for the jury fails to find that Dr. Nash or Mr. Jones, in expressing an opinion as to future events, did not believe their opinions were true, but Bailey knew he was deceiving the appellant. To set aside an agreement for fraud is an action in equity, and he who comes into equity must come with clean hands.

■ We do not believe that the form of issues 11–A, 11–B, and 11–C constitutes reversible error as assuming that there was some liability on the part of appellant. That was not the issue being inquired about, but such issue had already been submitted. Moreover, the settlement aside, there was no dispute as to the liability of appellant, and we do not believe that this form could possibly have injured appellant as complained of.

Issues 12–A, 12–B, and 12–C are incorrect.

Article 8307, § 12, Rev. Statutes, says:

"The board upon application of either party may, in its discretion, having regard to the welfare of the employee and the convenience of the association, authorize compensation to be paid monthly or quarterly.

"Where the liability of the association or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

■ Appellant, to sustain the settlement, pleaded that the extent of the injuries to Bailey was uncertain, indefinite, and incapable of being satisfactorily established. The issues are not whether the extent of the injuries is uncertain, etc., at the time of the trial in the district court, but is whether they were uncertain at the time of the settlement agreement. Otherwise the injured could settle with the insurer, then appeal his case, and await the course of time. If he got well, as per prognosis, he could drop his suit, and, if not, then submit to the jury when his medical case had progressed to the point of definite prophesy and claim the settlement made long before to be not within the statute. If the laborer could do this, the insurer could also. What we have said is not to be confused with the right of the board to pass upon the settlement. The discretion of the board involves many items as well as whether the injury is subject to compromise. Moreover, the evidence is so overwhelming that the extent of Bailey's injuries was uncertain and indefinite that we cannot allow the finding to stand. Bailey did not know how seriously he was injured, the jury have found, presumptively, that the doctors did not know, and that the Industrial Accident Board did not know, and that Jones did not know. Bailey's own physician testifying at the trial will not state positively the cause or the future of his ailments, and the jury found that the doctor's opinion was too favorable to Bailey. The serious portion of such claimed injuries was internal and a part subjective in their symptoms.

What we have said requires that the case be reversed. Whether it be remanded or rendered requires an analysis of the opinion in Lumbermen's Reciprocal Ass'n v. Henderson (Tex. Com. App.) 15 S.W.(2d) 565, 566. Therein the Commission of Appeals, Section A, speaking through Mr. Commissioner Nickels, said:

"Averments of fraud in procurement are essentially of judicial cognizance; and because the Industrial Accident Board is not a court (article 5, Constitution; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556), its action is in nowise a condition precedent to institution of judicial proceedings to secure appropriate relief. Accordingly, Henderson's application to the board for vacation of the asserted agreement was not required, and the board's declination to grant that prayer (evidenced by the so-called 'award' of July 2, 1926) is without effect. In such a case, we hold, the requirements of 'notice' as a condition of jurisdiction has no application, and the district court (despite lack of 'notice' shown in '1' above) had authority to adjudge vacation of the agreement.

"But recovery of 'compensation' in the district court is differently circumstanced. The matter of an 'award' giving or denying compensation is definitely placed in the board by tripartite agreement, and thus, in a manner avoiding constitutional obstacles to investiture of administrative agencies with the judicial functions; in respect to compensation given or denied, and 'appeal' from that action, compliance with the statutory requirements of notice is jurisdictional. Mingus v. Wadley, supra [115 Tex. 551, 285 S. W. 1084]; Oilmen's Reciprocal Ass'n v. Franklin, supra [116 Tex. 59, 286 S. W. 195]."

Now the statute in so many words says that upon a showing of "fraud, mistake or change of condition the Board may review any award," etc. Article 8306, § 12d, R. S. as amended by Acts 1931, c. 155, § 1 (Vernon's Ann. Civ. St. art. 8306, § 12d). It is thus plain that the Legislature intended that the Industrial Accident Board have power in a proper case to pass upon fraud. True, as said in Lumbermen's Reciprocal Ass'n v. Day (Tex. Com. App.) 17 S.W.(2d) 1043, 1045, the Legislature was not speaking particularly of settlements in that section,

but neither was it expressly avoiding them. But the point here is not in such distinction, for, if the Henderson Case is sound, the board is stripped of its right to review a fraud case, because same is "essentially of judicial cognizance," i. e.,' the Legislature could not give such power to an institution such as the board or any other not a court. That is only saying that such a statute would be unconstitutional.

The opinion cites no authority for such holding, and we fail to find anything in judicial precedent that justifies any such conclusion, but, on the contrary, it seems to us that the history of our own statutes gives abundant and compelling argument to the contrary. In 1846 the Legislature passed statutes providing for arbitration. Title 10 (arts. 224–249). By consent the parties agree that persons not lawyers, or even public officers, may be appointed to pass on their differences, and the award of such arbitrators shall become the judgment of the courts. Article 231, R. S. This statute has been on our books ever since, and has been upheld many times, and no one has been found who has declared it unconstitutional because it allowed a board of arbitrators not a court to pass on fraud. Fortune v. Killebrew, 86 Tex. 172, 23 S. W. 976. Article 239, R. S., specially mentions disputes between employers and employees. In 1879 (Acts 1879, Sp. Sess., c. 34), the Legislature created a Commission of Appeals to which cases could be referred by consent and its decision should become the judgment of the Supreme Court. No exception was made of fraud. Our Supreme Court in Henderson v. Beaton, 52 Tex. 29, had this law before it and declared the same constitutional while pointing out that the commission was not in any sense a court.

Now the Industrial Accident Board also has no jurisdiction except by consent of the parties. This is as fully pointed out in the Middleton Case, 108 Tex. 96, 185 S. W. 556, the only case cited on this point by the Henderson Case, as in the cases above cited on the adjudication of the statutes on arbitration and the Commission of Appeals.

Likewise, the statutes vest full authority in the railroad commission to hear numerous matters which inescapably will often involve fraud, e. g., discriminations in service or rates by public utilities, articles 6045, 6057, R. S., and these statutes have been upheld by opinions expressly declaring these powers quasi judicial. Producers' v. M., K. & T. Ry. Co. (Tex. Com. App.) 13 S.W.(2d) 679.

The Legislature has turned over to the powers of the Industrial Accident Board the decision on doctor and attorney fees, medical matters, interpretation of insurance contracts, determinations that a man shall submit to an operation, what is notice, who is insured, what is course of employment, what is change of condition, mistake, when is a person mentally incompetent, and a thousand other matters covering the highest type of specialized learning in science, law, medicine, and similar fields requiring years of previous study. Our law books are full of cases that have been appealed from the award of the board in these various lines, but no one has arisen to challenge the jurisdiction of the board therein until the Henderson opinion.

The United States government found no difficulty in turning over to administrative boards the question of passing on fraud in making income tax returns, and the validity of such statutes were upheld. True an appeal lies to the courts from such awards, and so does an equal appeal lie from a decision of the Industrial Accident Board in like manner. The holding in the Henderson Case is the greatest blow the efficient working of the Workmen's Compensation Law has received since its passage. It has been followed by the Courts of Civil Appeals in at least eight cases according to Shepard's Citations. From the pages of those reports the plight of the laborer is vividly pictured. He is defrauded into signing a settlement. The Henderson decision forces him to the district court to set it aside, from there the loser may appeal. In the ordinary course of such a case the remedies are fully exhausted in two or three years. If he wins, he must then go back to the Industrial Accident Board for an award as to injuries, and from there again pursue his weary way over the path he trod before. If successful, he may at the end of five or six years get his compensation. It is against such very delays that the champions of the Industrial Accident Board urged its creation.

To such holding we cannot assent unless compelled by our superior officers, the Supreme Court of Texas.

In the case before us, if the Henderson Case is the law, when the board received notice from Bailey in his letter of October 9th that he suspected fraud in the settlement, its hands were tied. It could not pass on that question. It did proceed to pass on whether the settlement should be approved and did approve same. If the board obeyed the Henderson Case, we do not see how they could have made any order at all. They knew Bailey claimed fraud had been practiced on him. If he had been defrauded, his agreement was not binding; if his agreement was not binding, there was no settlement to be approved or disapproved, and the board had nothing to pass on. It could not decide as to his compensation, because the company claimed that settled. They could not pass on the settlement without disregarding the Henderson opinion. We therefore conclude that they did what we believe they should have done, i. e., weighed

the entire case and approved the settlement. From this order by appeal the district court gained jurisdiction of the entire case. If the Henderson Case is followed, the district court had jurisdiction only on the fraud in the settlement. The trial judge evidently took the same view of this matter as we do and proceeded to try out the entire issue.

The judgment of the trial court is reversed and here rendered for appellant, and that appellee take nothing.

### On First Motion for Rehearing.

Our holding was not intended to say that the district court of Jack county acquired no jurisdiction. On the contrary, we said outright that, refusing to follow the Henderson Case unless ordered to do so, we held that, the Industrial Accident Board having before it at the time of the consideration of the settlement agreement the contention of the appellee that same was procured by fraud, the award of that Board approving the settlement was a final order passing on the issue of fraud, the fairness of the settlement, and the right to further compensation, the entire case of Bailey. By appeal the district court gained jurisdiction of the entire case, the issue of fraud in procuring the settlement agreement, the propriety of the settlement, and, if such settlement be set aside, then the fixing of further compensation, if any. The appellee having failed on the facts to establish his right to set aside the settlement agreement, judgment in the district court should have been that same be approved. Appellee may within one week file a second motion for rehearing if desirable.

### On Second Motion for Rehearing.

Appellee, on second motion, insists that the judgment of the trial court should be affirmed, because, laying aside for the moment his contention that the settlement was fraudulent, there is no finding by the jury on a hotly disputed issue, namely, "Should the settlement be approved?"

The statute (article 8307, § 12, R. S.) provides that the insurer and the employee may in certain cases settle, compromise, or adjust liability "with the approval of the board". See, also, article 8307, § 5, R. S., as amended by Acts 1931, c. 224, § 1 (Vernon's Ann. Civ. St. art. 8307, § 5). These provisions have been construed to render such compromise of no binding effect unless so approved. Employers' Indemnity v. Woods (Tex. Com. App.) 243 S. W. 1085; Maryland Cas. v. Hodges (C. C. A.) 49 F.(2d) 127; Farris v. United States F. & G. Co. (Tex. Civ. App.) 251 S. W. 612.

This compromise was submitted to the board for its approval vel non. There was, as we have above said, the issue of fraud to be passed on. Also whether the case was subject to compromise under the statute. These questions were submitted to the jury and were discussed in our main opinion. As there pointed out, there was also the additional question before the Industrial Accident Board and on appeal before the district court of whether the board and the court would approve the settlement as one to the best interests of the public (which includes the appellee and his employer as well as appellant). An excellent dissertation on this duty of the board in such cases is found in the Woods Case, supra. This issue was passed on by the board and by appeal was a de novo matter for trial. Texas Employers' Ins. Co. v. Rodgers (Tex. Civ. App.) 284 S. W. 968; Consolidated Underwriters v. Saxon (Tex. Com. App.) 265 S. W. 143. The appealed order of the Industrial Accident Board was suspended. In the district court it is the object of a highly disputed testimony and thus could not be passed on by the court without a jury finding thereon. It was not submitted to the jury, nor was any request made therefor or objection to the charge for such failure. The approval or disapproval of the settlement thereupon passed completely out of the case. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. Without such approval the settlement was, under the unbroken line of authorities supra, of no force or effect, and the only judgment the court could enter, saving a possible discretion to grant a new trial, was a judgment for the plaintiff for his compensation.

The fact that this was a direct appeal from the order of the board upon presentation of the settlement proposition distinguishes it from such cases as Lumbermen's Reciprocal Ass'n v. Day (Tex. Com. App.) 17 S.W.(2d) 1043, where the settlement was approved and no appeal taken therefrom.

Likewise we do not have to consider such cases as Texas Employers' Ins. Ass'n v. Stephens (Tex. Civ. App.) 22 S.W.(2d) 144, 145; Nobles v. Insurance Co. (Tex. Com. App.) 12 S.W.(2d) 199, and New Amsterdam Co. v. Rutherford (Tex. Civ. App.) 26 S.W. (2d) 381, as to where is the burden of proof for the result is the same wherever that burden lies.

It is suggested that the judgment recites that the court disapproves the settlement, and that the evidence of the injuries suffered by appellee, and which the jury verdict finds yet exist, were not seriously controverted, and that such evidence and verdict justify the court's finding that the settlement is disapproved.

If the reasoning of either of these propositions is sound, the rehearing should be granted, our former judgment set aside, and the judgment of the trial court affirmed. It is so ordered.