## INDEMNITY INS. CO. OF NORTH AMERICA v. GARSEE et al.

### No. 2277.

Court of Civil Appeals of Texas. Beaumont.
Dec. 2, 1932.

Rehearing Denied Dec. 7, 1932.

818

See, also (Tex. Civ. App.) 47 S.W.(2d) 654.

Barnes & Barnes, of Beaumont, for appellant.

Fred A. White and R. H. Jernigan, both of Port Arthur, for appellees.

WALKER, C. J.

This suit was instituted in the district court of Jefferson county by appellant, Indemnity Insurance Company of North America, against appellee C. G. Garsee and others, as an appeal from an adverse award of the Industrial Accident Board. Upon trial to a jury it was found that Garsee suffered total incapacity from the date of the injury sued for in his cross-action for 174 days, and a permanent partial incapacity of 85 per cent. of the use of his arm. Judgment was entered in his favor upon these findings, from which this appeal was prosecuted. The nature of the case will be fully stated in the discussion of the propositions of error.

By its first four propositions appellant asserts: First, that appellee failed to plead a cause of action; and, second, that his proof failed to establish a compensable injury.

Appellee pleaded the nature of his injury as follows: "On or about the 3rd day of March, 1930, C. G. Garsee was in the employment of the Gulf Refining Company, and had been employed by the said Gulf Refining Company for a period of several years next prior to said date, and that on said date, while in the course of his employment with the Gulf Refining Company and while covered by Workmen's Compensation Insurance, received an injury while on duty, in the nature of an insect bite or other poisonous insect or animal on his arm at or near the elbow. That said injury was received in a bath house at said Gulf Refining Company, at or near Port Arthur, Jefferson County, while he was removing some objects from a barrel or other container at or near the bath house, and while engaged in the duty for which he was employed, and while about the business of his employer, the Gulf Refining Company. The nature of said injury will be more specifically set out hereinafter."

In support of the allegations of his petition he testified as follows, reducing his question and answer testimony to narrative form:

"I was working out at the Gulf Refinery, in the bathhouse on Sixteenth Street * * * and some kind of an insect stung me on the arm, on the 18th day of March, 1930. Well sir, of course I was working at the bathhouse, but I was working in a drum to put some worn clothes that had been thrown away around the hose to blow a sewer out in the bathhouse." He further testified that he was taking some old clothes out of an old barrel to wrap around a pump to blow a sewer out, and that it was a part of his duty, and that he couldn't get along without doing it; that he wasn't required to do it, but found out pretty soon he had to do it or the sewers would stop up and he couldn't wash the bathhouse locker rooms; that washing the bathhouse locker rooms was part of his duties; and that if the sewers stopped up he couldn't wash the bathhouse because the water would stand in there and had no way of getting out. On his cross-examination appellee further testified: "It was the same bathhouse where I was working when I got stung or bitten. Before I got my arm broken I was doing in the bathhouse that day what I do every day, clean up the bathhouse. It was the same kind of work I was doing when I got stung. * * * I had a broken arm. Yes, sir, that broken arm was received in the usual course of my employment. They gave me compensation a while paying me for that broken arm. I was working in the bathhouse when I got my arm broken. I broke that arm the last day of last year; the last day of last 1930, at nine o'clock in the morning. I was working when I got my arm broke. When I got my arm broke I was shutting the water off out of the shower bath upstairs in what is called the negro quarters. That was the same bath house I was working in when I was hurt before; it was the same bath house I was working in when I got stung or bitten. The day before I got my arm broke I was doing what I do every day, cleaning up the bath house. That was the same kind of work I was doing when I got stung. After I was bitten by the insect bite the job I returned to was straight days in the bath house, doing a part of the work I had done when I was shifting; cleaning up the bath house, cleaning around. In cleaning up the bathhouse about the first thing we did was shut the water off in the shower bath. Next thing we do is go around and get up all the clothes off the floor and all papers and rags, and then get back to the shower house and sweep and rinse them out."

Joe Ayo, a witness for appellant, testified that he was working in the bathhouse in March, 1930; that he knew C. G. Garsee and that he saw him on the morning of the 18th of March, and that Garsee told him that morning that during the night he had been bitten on the arm while cleaning the sewer pipe. "He was cleaning up the sewer pipe, the sewer drainage. He told me he was clean-

ing the sewer pipe and something bit him on the arm." On cross-examination Mr. Ayo testified that the sewer line in question in this case was the line that "drains off the bath water from the bath house and that the line frequently gets stopped up, soap and stuff like that, and in order to clean it out you take a hose and put the end of that hose in the opening in the sewer and pack old clothes around it and create a pressure to force the obstruction out of the sewer line"; and that Garsee told him he was cleaning up the sewerage, it was stopped up, and something must have bitten him while he was cleaning up the sewer.

Appellant's argument is to the effect that the insect sting or bite did not have its origin in any causative danger prevailing in the conditions of appellee's employment and that he was not exposed to any hazard to which he would not have been equally exposed apart from his employment; that the "accident" forming the basis of appellee's cause of action resulted from a danger to which mankind in general was equally exposed. It is also insisted by the fifth proposition that there was no proof that the work in which appellee was engaged at the time of his injury constituted work "in the usual course of trade, business, profession or occupation of his employer."

■ We will dispose of the last contention first. It is the law, as appellant insists, that it is not alone sufficient to show that the claimant was injured while engaged in or about the furtherance of his employer's business, but "he must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business, or profession." Aetna Life Ins. Co. v. Burnett (Tex. Com. App.) 283 S. W. 783, 784. The proof in this case is that appellee had been in the employment of the Gulf Refining Company for about fourteen years and for the two years immediately preceding his injury, had been doing bathhouse work, the very work he was engaged in at the time he received his injury. The conclusion is irresistible that the operation of the bathhouse was a part of the business of the Gulf Refining Company.

■ Appellant urgently insists that the insect sting or bite was "an act of God," and that the risk of being stung by the insect did not originate in the employment, and that while engaged in his employment he was not subject to a greater hazard or risk of the insect bite than if he had not been so employed. We think the facts refute this argument. In order to clean out the bathhouse it was necessary to keep the sewer open. To accomplish this purpose it was necessary that appellee perform the work in the manner testified to by him and Joe Ayo. The material for this work was stored in a barrel. No one except a

bathhouse employee had the right of access to this barrel. The record conclusively establishes the fact that the insect bite resulted from an effort on the part of appellee to discharge in an orderly way the duties of his employment. We think the risk or hazard in this case falls within the rule announced by the Supreme Court in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402, where it was said: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business" (citing Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. [916], 918).

As the evidence did not raise the issue of "act of God," the trial court did not err in refusing to define that term to the jury.

■■ It was improper for the court to ask the jury: "Was O. G. Garsee employed in the bathhouse of the Gulf Refining Company, if he were so employed, for substantially the whole of the year * * * prior to the 18th of March, 1930?" This question submitted to the jury an issue of law as distinguished from an issue of fact. It is the duty of the jury, as said by the Commission of Appeals in Simmonds v. St. Louis, B. & M. Ry. Co., 29 S.W. (2d) 989, 990, "to make findings of fact from the evidence, and that of the court to apply the law to the findings made by the jury and render a proper judgment thereon." So in this case the issue of fact was the number of days actually worked by appellee in the year immediately preceding his injury. It would have been the duty of the court to determine, as a matter of law, whether the time actually worked constituted "substantially the whole of the year." Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553, 554; Employers' Liability Assurance Corp. v. Butler (Tex. Civ. App.) 20 S.W.(2d) 209. However, the error complained of does not constitute reversible error because it appears as a matter of law, on authority of the cases just cited, that appellee had worked "substantially the whole of the year immediately preceding his injury." The evidence was that with the loss of time of not more than eight weeks, appellee worked every day during the year immediately preceding his injury, seven days in the week, eight hours a day, at 54 cents an hour.

■ We agree with appellant that appellee rested under the burden of showing that it was the compensation insurer of the Gulf Refining Company at the time appellee was injured. Without reviewing the testimony, we think this issue was established, as a matter of law, that appellant was the compensation insurer. However, appellant presents two propositions of error against this evidence. First, it says that the issue was established

by hearsay or secondary evidence, in that, appellee proved by W. Hilton Berger, appellant's local agent at Port Arthur, who had charge of this particular claim, as well as all other claims of this nature, that appellant was the compensation insurer of the Gulf Refining Company at the time appellee was injured. The point made is that this was secondary evidence. This contention is overruled. The contents of the insurance policy was not in issue. The effort made by appellee was merely to establish that appellant had issued its policy of insurance under the Workmen's Compensation Law (Rev. St. 1925, art. 8306, et seq., as amended). That was a fact to which any qualified witness could testify. Texas Employers' Ins. Ass'n v. Pierce (Tex. Civ. App.) 254 S. W. 1019. The second point against this testimony is based upon certain argument by appellee's counsel to the effect that he stated to the jury that appellant's counsel had refused to admit that appellant was the compensation insurer and in his argument again asked appellant's counsel to agree that appellant was the compensation insurer. This argument was not reversible error because the issue was established, as a matter of law, and, second, admittedly, counsel for appellee made the request of counsel for appellant in open court during the progress of the trial. It could not constitute error on the facts of this case to ask appellant in the presence of the jury to make this agreement nor to make the request again in connection with the argument.

Appellant also excepted to the following argument of counsel for appellee: "Take these questions and go out and answer them intelligently. Be sure you answer them as you think they should be answered, and be sure your answers are such that there is no contradiction in them. Go right down the line." The proposition is that this argument constituted an instruction to the jury to answer the questions so that appellee could recover, within the inhibitions of McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213; Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302. We cannot agree with this construction of the argument in issue. We find no intimation in this argument that the jury answer the questions any particular way. The case was submitted to the jury on thirty-three questions. It was the part of prudence to ask the jury to consider its answers carefully in order that the verdict might not be nullified by avoidable conflicts.

Appellant makes certain assignments against the claim of McMullen & Glass, druggists, for medical supplies furnished appellee. We do not discuss these assignments further because appellee concedes error in the respect charged.

Appellant is in error in the assignment that "there was no evidence that it and appellee's employer had notice of the alleged injury within a period of thirty days after the happening thereof." The evidence is all to the contrary on this issue. W. Hilton Berger, appellant's local agent, had immediate notice of appellee's injury.

By his original pleadings appellee stated that his injury was received on the 3d of March, 1930. Immediately before announcing ready for trial, by permission of the court, he amended his pleading in this respect and alleged his injury as of date March 18th. Appellant assigns error that the trial court refused to grant it a continuance on the ground of this amendment. No error was shown in this respect. Appellant was not surprised by reason of this amended pleading because under all the testimony it knew the actual date of appellee's injury.

Under the pleadings the hospital service sued for was rendered by Mary Gates Hospital at Port Arthur. Under the proof St. Mary Gates Memorial Hospital claimed to own this hospital bill as the successor to Mary Gates Hospital. There is no basis in the pleading for this claim. The rule, as stated by 5 C. J. 1008, § 24, is that "an assignee, suing to recover in his own right on an assigned chose in action or contract, must plead the fact of assignment by direct averment." Because this issue was not pleaded, the judgment in favor of St. Mary Gates Memorial Hospital has no support in the pleadings.

Under our Compensation Act, section 7 of article 8306, the doctor, the hospital and the other attendants upon appellee during his sickness could not recover for their services beyond the first four weeks immediately following his injury. The pleadings of the claimants in this respect were fatally defective, in that, it was not pleaded that their accounts were for services and medical supplies furnished during the first four weeks. This omission was called directly to the court's attention by a special exception, which was overruled. This ruling constituted error, and the judgment in favor of the claimants, in the face of this exception, is without support.

Appellee pleaded the award of the Industrial Accident Board in his favor and in favor of the different claimants based upon his alleged injury. He attached a copy of this award to his petition as an exhibit in support of his allegations. Appellant duly excepted to the petition in cross-action on the ground that this exhibit was improperly made a part of the pleading, which exception was in all things overruled by the trial court. As we understand the authorities, the overruling of this exception constitutes reversible error. The award of the board was immaterial to any issue to be tried by the jury and they had no right to know its contents nor to be advised in any way of the ruling by the Industrial Accident Board upon appellee's claim. As said by the court in Texas Employers' Ins. Ass'n

v. Downing (Tex. Civ. App.) 218 S. W. 112, 124, "it was presumably read when the petition was read * * * and. it was presumably in the hands of the jury as an exhibit to the petition in their retirement." That case was cited and quoted from with approval on this identical issue in Fidelity Union Casualty Co. v. Klatt (Tex. Civ. App.) 47 S.W.(2d) 417, 419. The issue in that case was stated by the court as follows: "As suggested by appellant, the overruling of the demurrer was harmless in itself, but the harmful error suggested by appellant consisted in permitting the reading before the jury of the paragraph of the answer of appellee to which the demurrer was directed, in which a verbatim copy of the award of the board is fully set out, as complained of in the second proposition. The question is then presented, was it error to permit the reading to the jury of the pleading stating the award made by the board, and, if error, was it reversible error?" Answering this question in the affirmative, the court said: "As said by the Amarillo court in Texas Employers' Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112, 120, 123, the fact that the award was not read at the time it was offered was not material, it was presumably read when the petition was read, and it was presumably in the hands of the jury as an exhibit to the petition in the jury's retirement." See, also, Commercial Standard Ins. Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105.

Appellee would· sustain the ruling of the court on authority of Farris v. United States Fidelity & Guaranty Co. (Tex. Civ. App.) 251 S. W. 612, 615; Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084; Travelers' Ins. Co. v. Peters (Tex. Com. App.) 14 S.W.(2d) 1007. In our judgment these authorities in no way support the ruling of the lower court. Thus in the Farris Case the trial court sustained the plaintiff's exception to the paragraph of the defendant's answer which pleaded the award of the Industrial Accident Board. In discussing the proposition based on that ruling, the court merely said: "We think some allegation as to the amount in controversy should be in plaintiff's petition to show jurisdiction of the court, and that a filing of the award with the clerk of the court does not comply with the requirements that the petition should affirmatively show that the court in which it has been filed has jurisdiction of the matters in controversy." All the court held in that case, and in the other cases relied upon by appellee, was that jurisdictional facts must be pleaded, and not that it was the duty of the claimant nor his right to plead the details of the award before the Industrial Accident Board, thus advising the jury that his claim had been previously adjudicated in his favor.

·For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for a new trial.