**EMPLOYERS' LIABILITY ASSUR. COR-
PORATION, Limited, v. YOUNG.**

**No. 5796.**

Court of Civil Appeals of Texas.   Amarillo.

June 9, 1947.

Rehearing Denied July 14, 1947.

Simpson, Clayton & Fullingim, of Amarillo, for appellant.

W. F. Nix, of Amarillo, for appellee.

PITTS, Chief Justice. ·

This is a suit filed by appellant, The Employers' Liability Assurance Corporation, Limited, against appellee, Alton C. Young, to set aside an award of the Industrial Accident Board allowing statutory compensation to appellee for injuries received by him in an automobile collision. Appellee answered by a cross action. Such answer alleged, in effect, that on September 22, 1945, while employed by the Amarillo Bridge Company, appellee was on his way to his home from the place of employment by conveyance furnished by his employer as a part of his contract of hire when he was seriously injured in a head-on collision between the car in which he was riding and another car. Appellant was a compensation insurance carrier for the employer.

The case was submitted to a jury in the trial court on numerous special issues, and, based upon the jury's answers to such issues, judgment was rendered for appellee for the sum of $20 per week for 401 weeks from and after September 22, 1945, the first payment to be made at the end of the second week after the said date of injury. The judgment also protected appellee's attorney for his fee. An appeal has been perfected to this Court. Appellant presents 25 assignments of error or propositions of law, some of which are grouped for presentation. The record is lengthy and that part of it involved in the issues joined here by the parties will be stated as the same are discussed.

Appellant combines several assignments and contends, in effect, that the evidence is insufficient to support the jury's findings to the effect that employer had agreed to furnish transportation for appellee as a part of its contract of hire and that such transportation was being so used by appellee at the time of his injury. But, it contends further, that the evidence shows conclusively that appellee had completed his day's work for employer and was returning home by means of his own choosing and was not acting in the course of his employment when he received the injury in question and that the trial court erred in its failure to so hold. Appellee resists appellant's contentions but the controversy is about the facts and not about the well recognized rule of law which provides that an employe is injured within the course of his employment when such injury occurs

while the employee is using the conveyance or means of transportation to and from work furnished by his employer as a part of the consideration for the services of the employee.

Appellant concedes that the burden is on it to establish its contentions conclusively by the evidence and it further concedes that it is the duty of this Court in considering the issues here raised to disregard all conflicts in the testimony and to consider only the evidence adduced in the light most favorable to appellee and to indulge in appellee's favor every intendment reasonably deducible from the evidence. Appellant further admits that an issue of fact is raised when the facts are controverted to the extent that different inferences may be reasonably drawn therefrom by the jury.

Appellee testified, in effect, that when he was employed, his employer, Mr. Barker, one of the partners and owners of the American Bridge Company, told him that the work would be at various places over the Panhandle; that appellee's wages would be 87½ cents an hour for doing general construction work and that transportation would be furnished by the employer from Amarillo to the job and return twice each week, that is, employer's transportation would take him from Amarillo to the job on Monday morning and return him to Amarillo on Wednesday evening and take him again from Amarillo to the job on Thursday morning and return him to Amarillo on Saturday evening; that the employer would use its own truck or a pick-up to take him back and forth but if the truck and pick-up were not available the superintendent or one of the foremen or some other man who worked for employer were being paid by the week to transport the men to and from the job; that Martin, employer's superintendent, told him that Duncan, one of the employees, was a labor foreman for employer; that Duncan worked with him and the other employees and "bossed" them also by directing their labor on the job and other laboring men on the job took orders from Duncan; that either Martin or Barker (but he thought it was Martin) told him that Cantwell, an employee, was being paid by employer to transport men back and forth in

his own private car and that Cantwell told him he was being paid by employer for such additional services; that appellee had worked for employer about three weeks before his injury during all of which time the work had been done at Hereford, Texas, and he had ridden back and forth between Amarillo and Hereford several times; that he often rode with Cantwell who claimed he was being paid for such services; that on Saturday afternoon, September 22, 1945, the date of the collision and injuries of appellee, McLaughlin, another employee, who was killed in the collision that resulted in appellee's injuries, asked Martin to furnish them transportation that afternoon to Amarillo with somebody other than with Cantwell who, McLaughlin told Martin, drove too recklessly and Martin told them he would find other transportation for them and that employer's pick-up would be available at six o'clock to take them home, but when they quit work at six o'clock and got ready to go home Duncan told Cantwell that he (Duncan) was going to work overtime and would keep the pick-up himself and he told Cantwell to take McLaughlin and appellee to Amarillo and Duncan likewise told McLaughlin and appellee to ride with Cantwell to Amarillo since the pick-up had to work overtime and they could not ride with him in it; that as a result of those instructions he got in Cantwell's car with McLaughlin and Cantwell and they left Hereford about six-thirty o'clock p.m. for Amarillo with Cantwell driving; that soon thereafter they had a head-on collision with another automobile on the highway about eight miles south of Amarillo which resulted in his injuries. Appellee further testified on cross-examination that he made a statement to a strange man while he was in the hospital and it was reduced to writing by the said man and appellee signed it; that the man said he was securing information concerning the insurance on Cantwell's automobile that was damaged in the collision; that in the signed statement he said in part, "My riding with Cantwell was a matter of accommodation on the part of Mr. Cantwell, and I have ridden with him since working on the Hereford job". Appellee further testified on redirect.

examination that superintendent Martin had told him that Cantwell was being paid to haul the men back and forth to work but that he thought he should ask Cantwell about riding with him which he did and Cantwell told him it would be satisfactory. He further testified that it was customary for employer's truck to pick up the men at Eighth and Tyler Streets in Amarillo when they were taken to Hereford by employer's truck to work and the truck delivered them back to the same place when they returned to Amarillo, but that Cantwell picked him up and delivered him back to North Eighth and Fillmore Streets in Amarillo, within two blocks of his home, when he rode with him and that this was a matter of accommodation to him on the part of Cantwell which he had reference to in his signed statement and that he tried to pay Cantwell for such accommodation but Cantwell refused to accept any pay and told him that employer was taking care of him for such transportation but that on one occasion he dropped $2.00 in Cantwell's pocket anyway. Both Duncan and Martin testified that Duncan had been a foreman for employer prior to the Hereford job but he was not a foreman on the Hereford job and Martin testified that he never told appellee that Duncan was a foreman on the Hereford job. Both Barker and Cantwell testified that employer had been paying Cantwell for the use of his car but such had been discontinued prior to the Hereford job and Cantwell further testified that he did not tell appellee that he was being paid by employer for the use of his car on the Hereford job. A large part of the remainder of the foregoing testimony of appellee was controverted by other witnesses but we believe the evidence raised issues of fact that were properly submitted to the jury by the trial court. The jury were the judges of the credibility of the witnesses and of the weight to be given their testimony. The jury found that employer agreed to furnish appellee transportation between Amarillo and Hereford in connection with the work as a part of the contract of hire and that the transportation furnished by employer was being so used by appellee at the time of his injury. We believe there is sufficient evidence to support the findings of the jury and that the trial court was justified in concluding as a result of the jury's findings that appellee was acting within the course of his employment at the time of his injuries. Such rule is set forth in the case of Republic Underwriters v. Terrell, Tex.Civ.App., 126 S.W.2d 752, with many authorities cited in support of the rule. However, the contrary was found as to the facts in that case.

Appellant contends that the evidence is insufficient to support the finding of the jury to the effect that appellee remained physically incapacitated to file a claim for compensation from the date of his injury, September 22, 1945, until July 3, 1946, and that there was no pleading and not sufficient evidence to show that appellee had good cause such as excused his failure to file his claim for compensation with the proper authorities as required by law and that the failure of the trial court to so hold was error.

■ Again there is no controversy between the parties about what the law is governing the questions raised but the controversy is confined to the questions of whether or not the pleadings and evidence support the findings of the jury and the conclusions of the trial court. It is admitted that employer knew about the injury and had actual notice of the same immediately after it happened, that if appellee did not file his claim for compensation with the proper authorities within six months from the date of his injury, the burden was upon him to plead and prove good cause, excusing his failure to do so, that appellee was injured September 22, 1945, and that the claim for compensation upon which the suit was predicated was signed by appellee on July 3, 1946, and filed with the Industrial Accident Board on July 5, 1946. Appellee pleaded in detail the results of the collision and the effects of the injuries on his body; that after his injury he was unconscious for a time and was taken immediately to the hospital in such condition where his case was diagnosed by physicians and surgeons who had his leg swung in mid-air with a 55 pound weight hanging on it in which position he remained 77 days, after which his body was placed in

a plaster cast from his feet to his armpits and such was kept on him until January 30, 1946, when it was removed and he underwent a major operation and his body was again placed in a plaster cast and remained there until April 1, 1946; that on or about April 1, 1946, his attending physician broke his leg over and undertook to reset it and again his leg hung in mid-air with a weight swung from his foot for five weeks after which he was again placed in a plaster cast until June 3, 1946, at which time he was placed in a wheel chair until June 26, 1946; that he was then permitted to return home for a visit on crutches with the aid and support of friends but was unable to work or to attend to the ordinary business affairs necessary to prosecute his claim for compensation until July 3, 1946, when friends assisted him to the office of an attorney where his claim was prepared and immediately thereafter filed. Appellee further pleaded his physical disability and alleged that since his injury he had suffered much physical pain, had remained in the hospital from which he had never been discharged, and was unable to look after business affairs but that he tried during such time without any success to get others to perform the necessary services for him in getting his claim filed with the Industrial Accident Board, wherefore he pleaded such as a good cause for his failure to file his claim within six months from the date of his injury with the said Board. We think appellee's pleadings are sufficient to support his claim of good cause such as excused his failure to file his claim for compensation within six months after the date of his injury.

On direct examination appellee testified fully and in detail about his injuries, the treatments, surgery, his suffering, and the dates of such, all consistent with and in support of his foregoing pleadings. On cross-examination he further testified that on or about November 7, 1945, he signed a claim for compensation in blank form and gave it to an attorney other than his present attorney with a request that it be filled out and filed with the Industrial Accident Board; that his stepfather brought the said attorney to see him in the hospital; that the said attorney promised to look after it for him but about a week later he had a letter from the said attorney declining to look after the matter for him but he failed to return the blank form he had signed; that he thought he had a claim for compensation and that such ought to be filed; that he asked both his mother and his stepfather to bring another lawyer to see him but they both declined; that his stepfather said it was not then necessary but he could file the claim when he got out of the hospital. Appellee further testified, "I thought it was necessary to file it, but I couldn't do nothing. I was laying there in a cast." He further testified that he was home on a visit for a time but he was still in a cast and had to be carried around while at home and, in effect, he maintained that he filed his claim as soon as he was physically able to do so.

■ The jury found that appellee was physically incapacitated by reason of the injury and that he remained physically incapacitated to file any claim for compensation until July 3, 1946. Appellant contends that because appellee signed a blank form for compensation on or about November 7, 1945, and gave it to an attorney with instructions to fill it out and file it that he had been physically able to file his claim for compensation since such date but, after a careful examination of the evidence, we do not agree with appellant. The jury heard all of the evidence about the injury, surgery, and treatments of appellee as well as about the days, weeks, and months that he suffered in the hospital and how it weakened his physical condition and it was within the province of the jury to say how soon appellee became physically able to file his claim for compensation. We think the evidence was amply sufficient to support the findings of the jury about which appellant complains. Article 8307, Section 4a, authorizes the filing of a claim for compensation with the Industrial Accident Board in such cases any time within six months after the physical incapacity has been removed and such rule was approved by the Commission of Appeals in the case of Norwich Union Indemnity Co. v. Wilson, Tex.Com.App., 67 S.W.2d 225. However the jury found that appellee's physical incapacity was removed July 3, 1946, and

the record shows he filed his claim with the Industrial Accident Board two days thereafter. We believe the trial court was justified in concluding that appellee discharged his burden of pleading and proving good cause such as excused his failure to file his claim for compensation within six months of the date of the injury and appellant's contentions to the contrary are overruled.

Appellant charges that the trial court erred in submitting special issues numbers 6-A and 6-B to the jury inquiring if there was an employee of the same class as appellee working substantially the whole of the year next preceding the date of appellee's injury, in the same or similar employment as appellee and in the same or neighboring place and, if so, what was his average weekly wage rate. Appellant charges that there was no evidence to support such issues nor the jury's findings thereto returned and therefore no evidence to authorize the trial court to fix a wage rate for appellee from which the compensation rate could be determined.

■ Subsections 1, 2, and 3 of Section 1, Article 8309, Vernon's Annotated Civil Statutes, authorize the methods of fixing the average weekly wages of an employee under the Workmen's Compensation Act and provide as follows:

" 'Average weekly wages' shall mean:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employe, or other employe engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Appellee admits that he could not establish his compensation wage rate under the provisions of subsection 1 and he resorted to subsection 2 in an attempt to establish such rate. The record reveals that the jury found in answer to special issue number 6-A that there was an employee of the same class as appellee, working substantially the whole of the same year next preceding the date of appellee's injury, in the same or similar employment as appellee, in the same or neighboring place and the jury further found in answer to special issue number 6-B that the average weekly wage rate of such employee was $59. After appellee admitted that he could not comply with the provisions of subsection 1 in fixing his compensation rate, he had the right to resort to the provisions of subsection 2 to fix his average weekly wage rate but the burden was upon him to plead and to prove by evidence of such probative force as to authorize the jury to make such findings as would authorize the trial court to determine his compensation rate. A careful examination of the testimony reveals that there was evidence showing employer's classification of appellee as a laborer but there was no evidence showing or tending to show that there was any other employee of the same class working in the same or similar employment, in the same or neighboring place as that of appellee at the time of his injury for substantially the whole of the year or any part thereof next preceding appellee's injury. Since there was no proof of such an employee, there was no evidence fixing the average weekly, daily or annual wage rate upon which the trial court could rely

in fixing appellee's compensation rate. The trial court therefore erred in submitting such issues to the jury and in considering the answers of the jury to determine appellee's compensation rate and appellant's points of error complaining about such are sustained:

■ Appellant charges that the trial court erred in submitting to the jury special issue number 6-C asking the jury to fix the average weekly wage rate of appellee during the year next preceding his injury, based upon what may seem to the jury to be just and fair to both appellee and appellant as authorized in subsection 3 above set out and in considering the answer of the jury that such average weekly wage rate was $59 in fixing appellee's compensation rate because there was no evidence to support the submission of such an issue and no evidence to support the jury's findings and for the further reason that it was incumbent upon appellee to excuse himself both by pleadings and proof from relying on the provisions of subsections 1 and 2 of Article 8309, Section 1, before he was authorized to resort to the provisions of subsection 3 to fix his compensation rate. Appellant further states that, although he excused himself from relying on subsection 1, he had not attempted to excuse himself from relying on subsection 2, but on the contrary he pleaded, attempted to prove and relied on subsections 2 as well as 3 for fixing such compensation rate. Appellee admits that there was some uncertainty about which of the two latter subsections of the said article, that is, subsections 2 or 3, would apply in this case and for that reason the trial court submitted issues to the jury under the provisions of both subsections 2 and 3 of the said article and the jury found that the average weekly wage was $59 in answer to the inquires made under the provisions of each subsection. Under the law appellee had the right to choose which subsection he would rely on for fixing his compensation rate but he was not authorized to have the provisions of the two latter subsections submitted to the jury. The Commission of Appeals held in the case of American Employers' Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26, 27,

that the burden of proof is upon the person claiming compensation to offer legal evidence establishing an average weekly wage for himself under one of the three subsections of Article 8309, Section 1, and it further holds that " * * * under the statute the burden is on the claimant to show by competent evidence that it is impracticable to compute the average weekly wage under either subsections 1 or 2 before subsection 3 can be resorted to". Such rule was followed in the cases of Southern Underwriters v. Wheeler, 132 Tex. 350, 123 S.W.2d 340, Texas Employers Ins. Ass'n v. Schaffer, Tex.Civ.App., 161 S.W.2d 328, and many other cases. Under the record it was error for the trial court to submit special issue number 6-C to the jury. Under the law there is no evidence in the record which will sustain the answer of the jury as to the weekly wage of the appellee and therefore no evidence to sustain a judgment of any character against appellant.

■ Appellant complains that the trial court's definition of the term "Partial Incapacity" was erroneous and illegal and placed upon appellant a heavier burden than the law requires of him to get from the jury a finding that appellee was only partially incapacitated as a result of his injury. We do not agree with appellant's contention. The trial court says, "The term, 'Partial Incapacity', means a lack of physical power, in part only, or physical ability, in part only, for work. It means that one who has been injured is able to perform labor of a less remunerative class only, that is to say, it means that such person's earning capacity, by reason of such injury, if any, has only been reduced". Appellant says the definition is wrong because it fails to tell the jury that a person is partially incapacitated if he is unable to perform less than the whole of the task or work he had previously done and because the definition given made the amount of wages earned the determining factor as to whether or not partial incapacity existed and other complaints of a similar nature. In the case of Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991, 994, the Supreme Court ap-

proved the following definition, "The term, 'partial incapacity,' as used herein has the following meaning: it shall mean where an employee by reason of injury sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but, nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depression or reduction in his earning capacity". To attempt to distinguish between the two definitions would be a mere play on words. Very similar definitions of the term have also been approved in the cases of Texas Employers' Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, and Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, as well as others that may be cited. The definition here given by the trial court requires that the injury in order to result in "partial incapacity" must reduce the physical ability of the injured and thus result in a reduction of his earning capacity. It seems that no definite rule has been announced that will govern in all cases but we believe the trial court's definition is not subject to the complaints made.

Appellant challenges as erroneous issue number 1-A as the same was submitted by the trial court because it does not limit the injuries received by appellee on September 22, 1945, to the injuries alleged in his petition but permitted the jury to speculate on matters without the scope of evidence heard.

The issue complained of reads as follows: "Do you find from the preponderance of the evidence that the cross petitioner, Alton C. Young, sustained an injury on the 22nd day of September 1945?" The jury answered the issue in the affirmative.

It will be noted that appellee's petition alleges that he received his injuries as a result of the collision of an automobile in which he was riding with another automobile on the given date; that all of the general injuries of which he complains were caused thereby and all of the incapacities for which he seeks compensation resulted therefrom.

Appellant requested and complains of the refusal of the trial court to submit its special requested issue number 1, which is as follows: "Do you find and believe from a preponderance of the evidence that the plaintiff in cross action, Alton C. Young, sustained an injury, if any revealed by the evidence in the case, on the 22nd day of September, 1945?"

It is a familiar rule that he who seeks to recover compensation by reason of an injury must recover, if at all, upon the cause of action alleged and by reason of the proof supporting the same. The inquiry of the trial court should have been limited to the injury alleged rather than given in a general way as was done in special issue number 1-A and we believe the rule should be followed even though one injury only has been alleged and no other has been raised by the evidence. The rule is supported by the following authorities: Casualty Underwriters v. Lemons, Tex.Civ.App., 114 S.W.2d 333; Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552; Traders' & General Ins. Co. v. Low, Tex.Civ.App., 74 S.W.2d 122; and New Amsterdam Casualty Co. v. Rutherford, Tex.Civ.App., 26 S.W.2d 377.

Appellee contends that the error, if any, was corrected by the admissions of appellant through its counsel before the jury and it may have been but we are doubtful about that. We therefore sustain appellant's assignment of error.

Appellant assigns as error the failure and refusal of the trial court to place the burden of proof upon appellee to establish by a preponderance of the evidence the necessary answers for recovery in several issues submitted upon which appellee relied for recovery but on the contrary the burden of proving the converse was placed upon appellant to establish by a preponderance of the evidence answers to the said issues favorable to it. The issues about which appellant complains were questions propounded by the trial court to which the jury was directed to answer "Yes or No". Since the case will be reversed and re-

manded for a new trial on other grounds we think it is proper to discuss the complaints here made for the reason that the right of a litigant to have the jury properly instructed on the burden of proof is a valuable one.

The trial court here instructed the jury that "By the term, 'Preponderance of the Evidence', is meant the greater degree and weight of credible testimony before you", thereafter it propounded the questions about which appellant complains in the form, "Do you find from a preponderance of the evidnce" (following with the question to be determined) and directing the jury to "answer yes or no".

In the case of City of Waco v. Diamond, Tex.Com.App., 65 S.W.2d 272, 273, a damage suit in which questions of negligence were to be determined, the Commission of Appeals said that the trial court failed to define "the burden of proof" but that it did properly "begin each question submitted with the words, 'Do you find from a preponderance of the evidence' ", followed by the question propounded. In the case of Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W.2d 658, a compensation case, the Supreme Court held in effect that it was error to merely instruct the jury upon whom the burden of proof is placed and then leave it to the jury to see that it is so placed. It further held that when a jury is told to answer all questions "from a preponderance of the evidence", such instruction means that all answers must be supported by a preponderance of the evidence regardless of which litigant the answer favors and that it is the duty of the trial court to clearly instruct the jury that the burden of proof is upon the party seeking a favorable answer to an issue he has raised himself to so establish it by a preponderance of the evidence. In that case the Supreme Court likewise "adopt[s] and approve[s]" the discussion and ruling laid down on the manner of submitting issues in the case of Psimenos v. Huntley, Tex.Civ.App., 47 S.W.2d 622.

In that case the court discusses at length the manner of submitting issues to a jury that may be answered "yes" or "no" and it said there are some differences of opinion among the courts with reference to the proper manner of placing the burden of proof in submitting such issues. It ably discusses some of the views expressed. It then holds that there should either be a specific instruction placing the burden where it properly belongs or that each issue should be so framed that the jury would necessarily understand that the same should be answered favorable to the party seeking to establish an affirmative answer only in the event that the testimony preponderated in favor of such an answer. It cites many authorities in support of its holding.

There have been so many different views about instructions to juries upon the burden of proof and so much dissension that the Supreme Court in writing the Rules of Civil Procedure instructed the courts in Rule 277 to submit the issues where practicable in the affirmative and in plain and simple language and to frame them so as to show where the burden of proof lies. It further says that if such cannot be done without complicating the form of the issue, the burden of proof on an issue may be placed by a special instruction given. For example, if an issue that would require a "yes" or "no" answer could not be propounded so as to place the burden of proof without complicating the same, it may be simply propounded without attempting to place the burden of proof and then instruct the jury immediately thereafter, as follows: "If you find from a preponderance of the evidence such to be true you will answer the special issue in the affirmative; otherwise, you will answer the same in the negative".

Appellant complains that the trial court erred in permitting appellee to inform the jury of the proceedings had before the Industrial Accident Board and that the Board made an award against appellant in this case.

Appellant pleaded in part that the said Board heard and determined the claim after due notice to the parties, made and entered its final decision, judgment and award in the cause; that within twenty days thereafter appellant filed notice of appeal with the Board asserting it was not satisfied with the award made by the Board but would appeal to a court of competent jurisdiction; that appellant did file its appeal

in the District Court, the same being this cause, and being an appeal from the said award and the said action did and does constitute an appeal from the said award. This part of the pleadings was read to the jury over the objections of appellant.

■ Section 5 of Article 8307, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 8307, § 5, provides that if the award is made against the insurance association it is the privilege of the association if it is not satisfied to file suit to set aside the award of the Board and the court shall determine the issues upon a trial de novo, but the burden of proof shall be upon the party claiming compensation. In such event it is necessary to make a showing of some sort to show jurisdiction of the court but that matter is a question of law and should be presented to the trial court only. It has been many times held that an award of the Board was immaterial to any issue to be tried before the jury and the jury has no right to know about the action of the Board nor to be advised in any way of the award made by the Board upon appellee's claim. It is error to advise the jury of the proceedings had before the Industrial Accident Board. Among the many authorities we find that support this rule of law are Indemnity Ins. Co. of North America v. Garsee, Tex.Civ.App., 54 S.W.2d 817; Commercial Standard Ins. Co. v. McGee, Tex. Civ.App., 40 S.W.2d 1105; Fidelity Union Casualty Co. v. Cary, Tex.Com.App., 25 S.W.2d 302; Texas Employers' Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112. It was error for appellee to apprise the jury in any manner of the proceedings had before the Industrial Accident Board and the outcome of the hearing had before the Board.

Appellant assigns other errors due to arguments and other statements made by appellee's counsel before the jury that we do not deem it necessary to pass on here since they will not likely occur again in a new trial.

After carefully reviewing the voluminous record and lengthy briefs we are of the opinion that for the errors shown above the judgment of the trial court should be reversed and remanded.